381 So.2d 449 (1980)
STATE of Louisiana
v.
Paul J. COLLINS.
No. 64779.
Supreme Court of Louisiana.
March 3, 1980.
*450 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., W. C. Douglas Friederichsen, Abbott J. Reeves, Asst. Dist. Attys., for plaintiffs-respondents.
George C. Ehmig, Gretna, for defendant-relator.
DIXON, Justice.[*]
The relator was found not guilty of a crime by reason of insanity and committed to a mental institution. There was subsequently a remission of his mental disease, accomplished through the continued administration of drugs. Writs were granted to consider whether relator's "synthetic sanity" required his release from the mental institution.
The facts are not in dispute. Collins was charged with attempted armed robbery. At arraignment on April 27, 1978 he pleaded not guilty and not guilty by reason of insanity. Acting on the report of an appointed sanity commission the trial court found the relator incompetent to stand trial. He was committed to the East Louisiana State Hospital on April 28, 1978. When hospital officials, on September 7, 1978, certified the relator competent to stand trial, he was returned to Jefferson Parish. The case was submitted without a jury. The state and the defense stipulated to the testimony of two psychiatrists, both of whom were of the opinion that Collins was unable to distinguish between right and wrong at the time of the commission of the crime. The trial court, on September 28, 1978, found the relator not guilty by reason of insanity, and remanded him to the East Louisiana State Hospital.
Seven months later officials of the hospital reported that the relator's psychosis was in remission and that in his present mental condition he posed no danger. He was returned to the trial court for a hearing on his release. At the hearing the relator's hospital records were introduced and two psychiatrists who had examined the relator testified. The psychiatrists testified to essentially the same thing: that if the relator followed the medical regimen recommended by his psychiatrists (including daily medication) he would not pose a danger either to himself or to society if he were released. Both also testified in much more tentative terms that it was their opinion that if the relator stopped taking his medication he would probably suffer a relapse and in those circumstances he could pose a danger to himself and others.
At the end of the hearing, the trial court expressed its intention to see if the relator could be released under supervision. When it ruled a week later, however, the trial court directed that the relator be returned to the East Louisiana State Hospital for further treatment. The court expressed its inclination against "fostering upon the public at this time an unstable individual who has the propensity to remit." We granted writs to review that action of the trial court.
This court addressed the issue of synthetic sanity in State v. Hampton, 253 La. 399, 218 So.2d 311 (1969). In that case we held that a defendant in a criminal trial was competent to stand trial even though a remission of his psychotic symptoms had been achieved only through the administration of tranquilizing drugs. We felt that to look beyond the defendant's condition and find him incompetent because that condition was chemically induced would be to "erase improvement produced by medical science." *451 253 La. at 403, 218 So.2d at 312. We therefore held that the fact that the remission had occurred because of the administration of medication was of no legal significance. Similarly, in the case at bar, we cannot ignore the fact that the relator at present poses no danger to society or to himself merely because the improvement in his condition was caused by the very treatment which he was sent to East Louisiana State Hospital to receive. To do so would be to disregard the fact that the assiduous application of the knowledge of medical science can indeed transform patients into contributing members of society.
C.Cr.P. 657, pertaining to the release of persons committed after being found not guilty by reason of insanity, provides:
"After considering the report or reports filed pursuant to Articles 655 and 656, the court may either continue the commitment or hold a contradictory hearing to determine whether the committed person can be discharged, or can be released on probation, without danger to others or to himself. At the hearing the burden shall be upon the committed person to prove that he can be discharged, or can be released on probation, without danger to others or to himself. After the hearing the court may order the committed person discharged, released on probation subject to specified conditions for a fixed or an indeterminate period, or recommitted to the state mental institution. Notice to the counsel for the committed person and the district attorney of the contradictory hearing shall be given at least thirty days prior to the hearing."
The trial court must certainly be afforded some degree of discretion in making decisions under that statute. It cannot be read, however, to give the court unbridled power to disregard the evidence or to act arbitrarily. It would be meaningless to give a committed person an opportunity to prove that he is not dangerous if the trial court then had the absolute discretion to disregard that proof.
The evidence in the instant case is convincing that the proper course in the trial court was to release the relator subject to such probationary conditions as would insure his compliance with the prescribed medical regimen. C.Cr.P. 657 allows a committed person an opportunity to prove that he should be released on probation. The Official Revision Comment to C.Cr.P. 657, in relation to probationary release, states that "there will be cases in which release is justified only if the defendant is to be carefully supervised upon his return to community life." That language fits this case. We agree with the trial court that supervision is required. That supervision, however, does not require the relator's confinement indefinitely. C.Cr.P. 657 clearly provides that non-custodial supervision can be provided through the imposition of whatever probation conditions the trial court finds proper. In light of the uncontested evidence that relator can be safely released on probation subject to conditions insuring that he follow the prescribed regimen, we find that the trial court erred.
For the reasons assigned, the trial court's order returning the relator to the East Louisiana State Hospital is vacated, and the case is remanded for further proceedings consistent with this opinion.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents.
MARCUS, Justice (dissenting).
I disagree with the findings of the majority that relator at present poses no danger to society or to himself and that he can be safely released on probation subject to conditions insuring that he follow the prescribed regimen. While it is true that relator poses no danger to society or to himself so long as he continues to take medication, the testimony of the psychiatrists indicates that if relator discontinues medication, he will likely relapse and become dangerous. The evidence also reveals that the attempted robbery with which relator was charged occurred during a relapse caused by his failure to take medication prescribed by the West Jefferson Mental Health Center. Accordingly, *452 I do not consider that the trial judge abused his discretion in finding that relator failed to carry his burden of proving that he can be discharged, or can be released on probation, without danger to others or to himself. See La. Code Crim. P. art. 657.
Additionally, I consider the majority's reliance on State v. Hampton, 253 La. 399, 218 So.2d 311 (1969), to be misplaced. In Hampton, our inquiry was limited to whether "defendant presently lacks the capacity to understand the proceedings." La. Code Crim. P. art. 641 (emphasis added). We "[did] not look beyond existing competency." Here, we must look further and determine whether "the committed person can be discharged, or can be released on probation, without danger to others or to himself." Id. art. 657. Consequently, that in Hampton we considered synthetic sanity to satisfy the standard of art. 641 does not mandate that it satisfies the standard of art. 657.
Accordingly, I respectfully dissent.
NOTES
[*] Chief Judge PAUL B. LANDRY, Retired, participated in this decision as an Associate Justice Ad Hoc.