GAUTHIER, Justice Ad Hoc.
The relator herein, Calvin Charles Thompson, was charged with two counts of armed robbery and was found not guilty by reasons of insanity on July 19, 1977. The defendant was then found, at a show cause hearing, to be a menace to himself and to society, and the trial court ordered him committed to East Louisiana State Mental Hospital (ELSH) for six months after which time a report and re-evaluation were to be made. La.C.Cr.P. Art. 654.
On May 5, 1978, after a re-evaluation and reexamination by a lunacy commission, the Court found the defendant no longer a menace to himself and/or to society and placed him on court probation conditioned upon his participation in the Orleans Parish Criminal Sheriff’s Restitution Shelter Program for six months. La.C.Cr.P. Art. 657.
Defense counsel then filed an application for release or discharge on probation and the trial court appointed a lunacy commission to re-evaluate the defendant’s condition. A hearing was held on October 2, 1979, and Thompson’s probation was revoked, his application for discharge or release on probation was denied, and he was adjudged to be a menace to himself and to society and was again committed to ELSH. On March 15, 1980, we granted writs to review the decision of the trial court.
The trial record shows that Thompson has had a history of mental problems and has been confined in several mental facilities. On a previous probation he failed to keep his appointments at the Chartres Mental Health Clinic. Most recently while on his present probation, the defendant returned to a “psychotic state” according to the treating physician, and was again committed to ELSH.
Dr. William C. Super, defendant’s treating physician, and the two members of the lunacy commission, Dr. Kenneth Ritter and Dr. Ignacio Medina, all testified at the hearing. The three doctors agreed that the defendant probably would not be a menace to himself or to society as long as he were under supervision and on medication; but that if he did not continue to take his medication there would be a good chance that he would have a recurrence of psychosis within a month or two and that he might possibly be a menace to society by trying something such as robbing a bank.
In regards to the type of supervision the defendant would need, Dr. Ritter testified:
“There has to be more than a probation officer involved in this, we don’t have mental problem service. I think there will have to be some responsible relative, people who are responsible for him, trustworthy people who will monitor him, the mental health center cannot be with him seven days a week, he has to be monitored with someone with common sense and enough responsibility to report to the probation officer or mental health clinic if something is not working right it is not a matter of mental health center and the probation officer, that does not work, it has to be someone near and dear to him, a supervisor.”
(Record at 20)
Defendant’s grandmother and aunts had previously testified that they could provide the needed support for defendant and that he would live with his grandmother. Upon questioning by defense counsel, Dr. Ritter admitted hearing and observing “all of them,” but could not say that they were “trustworthy”.
At the conclusion of the hearing, the trial judge found the defendant to be a menace to society and to himself and that he was dangerous and ordered him committed to ELSH. We granted writs to review that action.
In his writ application defendant contends that the trial judge ignored the overwhelming evidence, both expert and lay, adduced in defendant’s favor; and therefore erred in refusing to release him on probation and in finding the defendant to be dangerous and a menace to society and/or to himself.
*1116 The state contends that the trial judge correctly decided that Thompson’s artificially induced sanity could not be maintained if he would once again be released on probation under his grandmother’s supervision.
The court addressed this issue in State v. Collins, 381 So.2d 449, (La.1980). In construing La.C.Cr.P. Art. 657, we said:
“The trial court must certainly be afforded some degree of discretion in making decisions under that statute. It cannot be read, however, to give the court unbridled power to disregard the evidence or to act arbitrarily. It would be meaningless to give a committed person an opportunity to prove that he is not dangerous if the trial court then had the absolute discretion to disregard that proof.”
We went on to hold that the trial judge had erred in light of the uncontested evidence that Collins could safely be released on probation subject to conditions insuring that he follow the prescribed regimen.
The evidence in the case at bar is undisputed that the defendant is in need of supervision to insure he continues to take his medication if released. There is also testimony in the record that the defendant needs much closer supervision than either a probation officer or a mental health clinic could provide. Dr. Ritter felt that the defendant would need someone with common sense and enough responsibility to report Thompson if things were not working right.
The trial judge heard the testimony of the family members who the defense claimed could provide this supervision. He had the opportunity through personal observation to evaluate their qualifications, dedication and ability. He undoubtedly concluded that these family members would not be able to provide the supervision the defendant needed to insure his continued participation in his medical regimen.
Faced with the expert testimony indicating that Thompson needed close supervision and the apparent lack of someone who could provide that supervision, the trial judge made a reasonable decision. We cannot say that he disregarded the evidence or acted arbitrarily.
Furthermore, we find that the revocation of defendant’s probation by the trial court was also justified. Thompson was placed on probation on condition that he participate in the Sheriff’s Office Restitution Program for six months. He became psychotic, was removed from the program and recommitted to ELSH. Since he failed to meet this condition of his probation, as well as the general condition that he not become dangerous to himself or others, the trial court was not in error in revoking probation. See C.Cr.P. Art. 658.
We find that the decision of the trial court is supported by the record and affirm that decision.
AFFIRMED.
DIXON, C. J., dissents.
DENNIS, J., dissents with reasons.