**Ray JACKSON, Petitioner-Appellant,**

v.

**Charles FOTI, Jr., Etc., et al., Respondents-Appellees.**

No. 80–3817.

United States Court of Appeals, Fifth Circuit.*

Unit A

March 15, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452–October 14, 1980.

R. James Kellogg, New Orleans, La., for petitioner-appellant.

John H. Craft, Asst. Dist. Atty., New Orleans, La., for respondents-appellees.

Before THORNBERRY, REAVLEY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

In this appeal from the denial of a writ of habeas corpus, we examine the provisions of Louisiana law governing commitment of persons acquitted of a crime by reason of insanity. We conclude that the due process clause entitles insanity acquittees to a hearing before commitment and that the equal protection clause requires a state to afford insanity acquittees substantially the same protections, subject to certain qualifications, as are granted to persons committed under civil commitment statutes. Finding the procedures followed in the instant case to have been insufficient constitutionally, we reverse and remand for the entry of an appropriate order.

*The Facts*

In November 1974, Ray Jackson was indicted by an Orleans Parish, Louisiana grand jury for first degree murder. The question of Jackson's mental condition was raised immediately. After receipt of the report of a Lunacy Commission, the state trial judge found Jackson incompetent and unable to assist his counsel and ordered him committed to the Forensic Unit of the East Louisiana State Hospital at Jackson, Louisiana (hereafter referred to as the Feliciana Forensic Facility).

Following approximately two years of treatment, Jackson was ruled competent to stand trial. The state amended the indictment to charge second degree murder. Jackson's appointed counsel waived trial by jury and the case was tried on September 21, 1976, on a stipulation of facts and certain medical evidence. Concluding that Jackson was insane at the time of the homicide, the state trial judge found him not guilty and committed him to the Feliciana Forensic Facility, subject to further orders

of the court.[1] At the time of the trial and sentencing, no evidence was offered concerning Jackson's current mental state.[2]

In a letter dated September 8, 1977, a staff psychiatrist at Feliciana, writing for the superintendent, reported to the trial judge that Jackson "does not pose a threat of danger to himself or to society, for reasons of mental illness." Jackson was returned to Orleans Parish prison and the trial judge ordered him re-examined by the doctors who composed the earlier Lunacy Commission. The April 17, 1978 written report of these physicians concluded, "we cannot certify that *RAY JACKSON* is no longer a menace to himself or to society." At a hearing held on April 25, 1978, the trial judge ordered Jackson returned to Feliciana.[3]

Jackson sought and was denied habeas relief by the state trial court; the Louisiana Supreme Court denied writs. *State ex rel. Jackson v. Armistead*, 364 So.2d 124 (La. 1978). The present application, filed pursuant to 28 U.S.C. § 2254, was referred to a magistrate who, after initial review, stayed proceedings to allow the state court an opportunity to conduct another sanity hearing. The state court responded by re-appointing the two physicians who had served before, instructing them to "re-examine the defendant's present mental condition, and ... determine whether he can be released without danger to himself or others."

On December 11, 1979, the hearing, for which the federal action had been stayed, was convened before the state trial judge. The two doctors submitted the following brief report:

1. The state trial judge stated:
     In view of the evidence, I have no alternative but to find that the defendant, while he did commit the murder, was insane at the time of the commission, and consequently, find him not guilty.
     Now the court will not, of course, release this defendant on the community based on the testimony of the doctors. The court will order that he be remanded to the East Louisiana Hospital For The Insane, Civil Division, to be treated, and to remain there until he is cured.

Pursuant to your appointment of November 21, 1979, we have evaluated *RAY JACKSON* concerning whether or not he is potentially harmful to himself or others.

We cannot certify that *RAY JACKSON* is no longer a menace to himself or to society.

Both physicians testified that Jackson suffered from schizophrenia which was in "good remission." No medication had been necessary for over two years and there had been no manifestations of the illness for an extended period. Additionally, the doctors explained what they meant by declining to "certify that *RAY JACKSON* is no longer a menace." Because they could not *guarantee* that Jackson would not commit another violent act, out of an abundance of precaution, they were unwilling to say otherwise. The doctors conceded candidly they were concerned that if Jackson was released with their approval and later hurt someone they would be criticized severely. They were not prepared to risk that criticism. Upon conclusion of the hearing, the state trial judge stated:

     Well, the court finds that this defendant is now, and will be a menace to himself and to society. And, as a consequence, the court orders him remanded back to the Feliciana Forensic Facility, to remain there until the further orders of this Court.

With the state sanity hearing completed, action in the federal habeas suit resumed. The magistrate resolved that the proceed-

2. Prior to trial on the merits, a hearing was held and the court received a report of a Lunacy Commission relative to Jackson's mental condition at the time of the homicide two years before. At the conclusion of that hearing the trial judge stated: "The court finds this defendant is presently sane ..." Jackson was remanded for trial, which followed later that same day.

3. Jackson, however, remained in Orleans Parish Prison until December of 1979. By that time, the present federal action had been initiated and Jackson was remanded finally to Feliciana.

ings before the state trial court satisfied the requirements of article 654 of the Louisiana Code of Criminal Procedure[4] and afforded Jackson due process. The magistrate reached the conclusion that the sanity hearing prior to trial and the subsequent hearings held in state court "produced sufficient evidence for a finding that [Jackson] was both insane and dangerous to society and himself." Further, the magistrate determined, citing *Powell v. State of Florida*, 579 F.2d 324 (5th Cir. 1978), that Jackson was not denied equal protection of the laws because Louisiana employs different procedures for criminal commitments and civil commitments. After modifying the report, by addressing briefly the question of the reliability of evidence predicting dangerousness, the district court adopted the magistrate's recommendations and denied habeas relief.

Against this background we inquire whether the commitment and restraint of Ray Jackson are consistent with the constitutional guarantees of due process and equal protection. We conclude that further action is required before Jackson may be restrained constitutionally.

4. Article 654 of the Louisiana Code of Criminal Procedure provides:
    When a verdict of not guilty by reason of insanity is returned in a capital case, the court shall commit the defendant to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment.
    When a defendant is found not guilty by reason of insanity in any other felony case, the court shall remand him to the parish jail or to a private mental institution approved by the court and shall promptly hold a contradictory hearing at which the defendant shall have the burden of proof, to determine whether the defendant can be discharged or can be released on probation, without danger to others or to himself. If the court determines that the defendant cannot be released without danger to others or to himself, it shall order him committed to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment. If the court determines that the defendant can be discharged or can be released on probation, without danger to others or to himself, it shall either order his discharge, or order his release on probation

## Louisiana Provisions—Civil

Louisiana's statutes included a relatively detailed procedure for civil commitments at the time of Jackson's original commitment in 1976. By the time of the orders of April 1978 and December 1979, continuing his commitment, the Louisiana Legislature had adopted a comprehensive statute governing the examination, admission, commitment, and treatment of persons suffering from mental illness.[5] Included in the legislation is the procedure for judicial commitment, replete with copious specifications, starting with the standing of the party evoking the procedure and extending to the release of the patient.[6] Also included is a section entitled "commitment of prisoners," La.R.S. 28:59, subsection A of which reads:

Any person acquitted of a crime or misdemeanor by reason of insanity or mental defect may be committed to the proper institution in the manner provided for judicial commitment by the district court of acquittal and contradictorily with the district attorney.

## Louisiana Provisions—Criminal

The controlling statutory authority for the commitment of insanity acquittees is subject to specified conditions for a fixed or an indeterminate period.

5. La.R.S. 28:2, 28:54—57, and 28:59.

6. La.R.S. 28:54—56.
    The particularly pertinent definitions found in La.R.S. 28:2 are as follows:
    (3) "Dangerous to others" means the condition of a person whose behavior or significant threats support a reasonable expectation that there is a substantial risk that he will inflict physical harm upon another person in the near future.
    (4) "Dangerous to self" means the condition of a person whose behavior, significant threats or inaction supports a reasonable expectation that there is a substantial risk that he will inflict physical or severe emotional harm upon his own person.
    &ast;   &ast;   &ast;   &ast;   &ast;   &ast;
    (14) "Mentally ill person" means any person with a psychiatric disorder which has substantial adverse effects on his ability to function and who requires care and treatment. It does not refer to a person suffering solely from mental retardation, epilepsy, alcoholism, or drug abuse.

article 654 of the Louisiana Code of Criminal Procedure. See note 4, *supra*. The second paragraph of the article is relevant to Jackson for his indictment as amended charged a non-capital offense. The text prescribes: "When a defendant is found not guilty by reason of insanity . . . the court . . . shall promptly hold a contradictory hearing . . . . If the court determines that the defendant cannot be released without danger to others or to himself, it shall order him committed to a proper state mental institution or to a private mental institution . . . ."

In discussing the consequences for an insanity acquittee under this statute, the Supreme Court of Louisiana stated that the acquittee

will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others.

*State v. Babin*, 319 So.2d 367, 381 (La. 1975).[7]

### Constitutional Minimums

Jackson contends that his post-acquittal detention is unlawful because it has never been determined judicially that he is both mentally ill and dangerous. The principal evidence of Jackson's insanity or incompetency refers to his mental state at the time of the offense in 1974 and immediately thereafter. Jackson was declared to be insane at that time for purposes of Louisiana's criminal code.[8] All other specific findings, indeed the bulk of the evidence adduced at the subsequent hearings, involve the issue of Jackson's potential dangerousness if he were released. Each time the

court remanded Jackson to the mental institution, the order was based on a finding that he was considered a menace to himself and society.

The record does not contain a determination that Jackson is mentally ill, although there is evidence which may be taken as inferentially reflecting such illness. However, the record contains medical reports suggesting that Jackson is not mentally ill and a conclusionary finding by the trial judge of current sanity.

As defined in the civil commitment statute, to be mentally ill one must be afflicted "with a psychiatric disorder which has substantial adverse effects on . . . [one's] ability to function and . . . requires care and treatment." La.R.S. 28:2(14). Jackson maintains that this fundamental basis for civil commitments should control the institutionalization of insanity acquittees. Subject to certain variances and limitations, appropriately applicable to criminal commitments consistent with a state's additional responsibilities in that area, we find substantial support in the jurisprudence for this contention.

In *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), the Supreme Court held that a state prisoner was denied equal protection of the law when he was committed at the termination of his prison sentence without the benefit of a jury trial which is available to other persons civilly committed. In so holding the Court noted, "there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." 383 U.S. at 111–12, 86 S.Ct. at 762–3. Writing for the Court in *Jackson v. Indiana*, 406

---

**7.** The reference to the release by a court on certification from the superintendent suggests that in a criminal commitment case the Louisiana Supreme Court would follow at least portions of the procedures applicable to a civil commitment. Legitimate distinctions, however, may be permissible. For instance, while La.R.S. 28:56C authorizes the director of a treatment facility to discharge a person committed judicially, it is appropriate that the release of insanity acquittees be subject to approval of the committing court. Such a qualification is not inconsistent with the equal protection clause.

**8.** La.R.S. 14:14 notes the effect of insanity:

If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.

U.S. 715, 724–25, 92 S.Ct. 1845, 1851, 32 L.Ed.2d 435 (1972), Mr. Justice Blackmun reminded that "[t]he *Baxstrom* principle also has been extended to commitment following an insanity acquittal, *Bolton v. Harris*, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968); *Cameron v. Mullen*, 128 U.S.App.D.C. 235, 387 F.2d 193 (1967); *People v. Lally*, 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966), and to commitment in lieu of sentence following conviction as a sex offender. *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972)." The *Humphrey v. Cady* decision is of particular significance for the Court therein underscored the necessity for a careful analysis of involuntary commitment procedures which occasion "such a massive curtailment of liberty." 405 U.S. at 509, 92 S.Ct. at 1052.

In *Bolton v. Harris*, the District of Columbia Circuit addressed the constitutionality of a statute under which all insanity acquittees were committed for an indefinite period. Declaring the law to be violative of the equal protection guarantee, our colleagues held, "persons found not guilty by reason of insanity must be given a judicial hearing with procedures substantially similar to those in civil commitment proceedings." 395 F.2d at 651 (footnote omitted). We addressed the perplexing problems presented by this subject in the benchmark case in this circuit, *Powell v. Florida*. Therein we voiced our agreement with *Bolton* "that a state must afford insanity acquittees substantially the same protections that it gives persons committed under the ordinary civil commitment statute ...." 579 F.2d at 332.

Under La.R.S. 28:54A, before judicial commitment is permitted, Louisiana requires a dual finding: the person is mentally ill and poses a danger to self or others. *See* Comment, *The Louisiana Mental Health Law of 1977: An Analysis and a Critique*, 52 Tul.L.Rev. 542 (1978). The Louisiana civil commitment provisions, under *Powell*'s direction, provide the standard against which we measure the constitutional minimums for an insanity acquittee commitment. These include a hearing to determine the acquittee's current mental condition and the danger he poses to himself and others.

A hearing focused on the question of insanity at the time of the offense does not automatically satisfy the hearing requirement. An analysis of the mental condition of the accused at the time of the crime charged may address concerns which are entirely different from the issues involved in determining a person's current mental state. The evaluation itself may differ and, as in the instant case, a substantial period of time may have elapsed.

Further, the acquittee's continuing propensity for danger must be ascertained. The hearing on the issue of sanity at the time of the offensive act may or may not suffice for this. Due process requires that the findings of dangerous propensity and current mental condition "be made following a hearing at which the defendant is present with counsel, has an opportunity to be heard and to present evidence, and has an opportunity to confront and cross-examine witnesses." *Powell v. Florida*, 579 F.2d at 330 (*citing Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); *Bolton v. Harris*).

■ Our conclusion that a hearing is necessary does not equate to a finding that every criminal commitment ordered without the benefit of a prior hearing is invalid. A subsequent hearing may prove adequate if the dual inquiry is made and satisfied. Such a hearing may result from a petition by the acquittee or be ordered by the court on its own motion. In Jackson's case, two hearings were held in state court following his commitment. Either of these hearings would have been sufficient to pass constitutional muster, under both the due process and equal protection banners, if proper judicial findings had been made, consistent with Louisiana's civil commitment provisions, regarding Jackson's current mental condition and his dangerousness potential.

The judicial findings in the record before us are sufficient as relates to the dangerousness element. Although we entertain some doubt that the physicians' mere decli-

nation to certify that Jackson is no longer a menace to himself or society, in light of their qualifying explanation, meets the measure of proof required, we defer to the trial court under the *Powell* guidelines. Under *Powell*, dangerousness is a determination that does not lie solely within the province of medical opinion; "a state may reasonably allow the judge to play a greater role in making this determination . . . than he plays in other civil commitment cases." 579 F.2d at 333. In view of Jackson's anti-social act of homicide, the state trial judge was entitled, on this record, to find Jackson to be dangerous. As we observed in *Powell*:

> This past conduct justifies a greater role for the trial judge in determining whether an insanity acquitee remains dangerous to society in order to protect society from similar behavior in the future.

*Id.* (*citing United States v. Ecker*, 177 U.S. App.D.C. 31, 543 F.2d 178 (1976), *cert. denied*, 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977)).

■ The inadequacy in the judicial findings in this record involves Jackson's current mental condition. Unless Jackson presently is mentally ill, as defined in the mental health law quoted above, he may not be committed to an institution. The propensity for danger is not enough. Mental institutions exist for the benefit of those who can be helped by care and treatment or who require custodial attention. They are not substitutes for prisons.

On the issue of current mental condition, the trial judge's finding must be supported by competent medical evidence. For as we noted in *Powell*, equally applicable in this case because of the requirements of Louisiana law in civil commitments, "Equal protection prohibits the judicial commitment of an insanity acquittee . . . without an underlying medical judgment that he is mentally ill." 579 F.2d at 332.

■ We decline the invitation to declare as facially unconstitutional the Louisiana criminal commitments provisions applicable in this case. The second paragraph of article 654 of the Louisiana Code of Criminal Procedure requires a hearing before a criminal commitment. La.R.S. 28:59 prescribes that an insanity acquittee may be committed "in the manner provided for judicial commitment." Taken together, the pertinent Louisiana statutes, as written, are consistent with both the due process and equal protection clauses of the fourteenth amendment. The application of these provisions to Jackson, however, is insufficient constitutionally. Jackson is entitled to habeas relief.

The judgment of the district court is REVERSED and the matter is REMANDED for entry of a judgment directing issuance of a writ of habeas corpus commanding the release of Jackson unless, within a time as fixed by the district court, it is determined judicially that Jackson is mentally ill within the meaning of Louisiana's civil commitment statute. This determination may be made on the record as presently constituted, provided that both Jackson and the appropriate representative of the State of Louisiana, are permitted a reasonable opportunity to supplement the record with relevant, material evidence.