487 So.2d 671 (1986)
STATE of Louisiana
v.
Ricky PEREZ.
No. 85-KA-672.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1986.
Writ Denied June 6, 1986.
*672 John M. Mamoulides, Dist. Atty., William W. Hall, Dorothy A. Pendergast, Asst. Dist. Attys., Louise Korns, of Counsel, Office of the District Attorney Gretna, for plaintiff-appellee.
Joseph J. Tosh, Tosh & Tompson, Gretna, for defendant-appellant.
Before KLIEBERT, GAUDIN and DUFRESNE, JJ.
KLIEBERT, Judge.
This is an appeal by the defendant, Ricky Perez, from a judgment of the district court continuing his commitment to the custody of the Department of Health and Human Resources (DHHR). Perez had been committed to the DHHR's custody following a trial in which he was found not guilty of second degree murder by reason of insanity. For the reasons which follow, the judgment of the district court is affirmed.
On October 6, 1978, Ricky Perez was indicted for the first degree murder of his father, Wesley Perez. When the state amended the indictment to change the charge to second degree murder, Perez entered a plea of not guilty and not guilty by reason of insanity, waived his right to trial by jury and proceeded to trial before the district court judge. At the conclusion of trial, Perez was found to be not guilty by reason of insanity and ordered committed to the East Louisiana State Hospital for treatment and observation on January 30, 1979.
On December 3, 1981, the defendant filed a motion to be released from custody pursuant to LSA-C.Cr.P. Article 655(B), which provides as follows:
B. A person committed pursuant to Article 654, may make application to the court by which he was committed, for discharge, or for release on probation. Such application by a committed person may not be filed until the committed person has been confined for a period of at least six months after the commitment. If the determination of the court is adverse, the applicant shall not be permitted to file another application until one year has elapsed from the date of determination.
At the conclusion of the hearing the trial court entered an order returning the defendant to the custody of the DHHR. The order granted the DHHR permission to begin a program to de-institutionalize the defendant, granted the defendant pass privileges to leave the hospital and ordered the DHHR to report to the court on the defendant's progress periodically.
In 1982 and 1983 Perez's efforts to obtain expanded pass privileges resulted in additional hearings but repeated refusals to grant the request. Finally, after still another sanity hearing held in October 1984, the trial court authorized pass privileges at the discretion of the treating physician at the East Feliciana Forensic Facility, with the specific instruction that the pass privileges were to be for weekends only. Thereafter, on May 31, 1985, the trial judge issued an order cancelling and revoking all of Perez's pass privileges. Although the record does not contain the motion or a transcript of the hearing, testimony in a subsequent hearing shows the pass privileges were revoked at the request of Perez's treating physician due to the institution of Lithium treatments.
A few months later Perez again applied to the trial court for a discharge or release on probation. At the resulting hearing held on September 12, 1985, Perez's two treating psychiatrists, a social worker and a nurse testified. In substance, the treating psychiatrists were of the opinion Perez's mental illness would receive no further benefit by continued treatment at the hospital and as long as he stayed on his medication (Lithium) and refrained from the use of alcohol or drugs he would not be dangerous to himself or to society. However, neither doctor was willing to say Perez, upon release, would not return to the use of alcohol or drugs, and both indicated a probation officer would have to make certain Perez was continuing his treatment and being checked and monitored for the *673 use of alcohol or drugs on a weekly basis at a mental health clinic. The social worker and the nurse testified to the long association with Perez and expressed the view Perez could and would respond to treatment at a mental health clinic.
At various times during the hearing the trial judge repeatedly expressed his concern over the fact that due to their case load there was no practical assurance a probation officer could or would monitor Perez's behavior sufficiently to assure his continued reporting for treatment and abstinence from alcohol or drugs or report to him in sufficient time to re-commit Perez if he terminated his treatment or returned to the use of drugs or alcohol. At the conclusion of the hearing, the trial judge orally expressed the view that based on his review of the record made by the judge who prosecuted him and the testimony heard at the hearing conducted by him, he could not say Perez was not "a danger to himself or society." Consequently, he refused to revoke his commitment or extend his pass privileges.
On appeal Perez's counsel contends his continued detention is unlawful because the trial judge denied Perez's constitutional right to due process of law by continuing his commitment solely on the finding he was a danger to himself and to society. To support his contention counsel cites Jackson v. Foti, 670 F.2d 516 (5th Cir.1982), where Judge Politz, as organ of the court, said:
"Jackson contends that his post-acquittal detention is unlawful because it has never been determined judicially that he is both mentally ill and dangerous. The principal evidence of Jackson's insanity or incompetency refers to his mental state at the time of the offense in 1974 and immediately thereafter. Jackson was declared to be insane at that time for purposes of Louisiana's criminal code.8 All other specific findings, indeed the bulk of the evidence adduced at the subsequent hearings, involve the issue of Jackson's potential dangerousness if he were released. Each time the court remanded Jackson to the mental institution, the order was based on a finding that he was considered a menace to himself and society.
The record does not contain a determination that Jackson is mentally ill, although there is evidence which may be taken as inferentially reflecting such illness. However, the record contains medical reports suggesting that Jackson is not mentally ill and a conclusionary finding by the trial judge of current sanity.
As defined in the civil commitment statute, to be mentally ill one must be afflicted "with a psychiatric disorder which has substantial adverse effects on... [one's] ability to function and ... requires care and treatment." La.R.S. 28:2(14). Jackson maintains that this fundamental basis for civil commitments should control the institutionalization of insanity acquittees. Subject to certain variances and limitations, appropriately applicable to criminal commitments consistent with a state's additional responsibilities in that area, we find substantial support in the jurisprudence for this contention.
* * * * * *
A hearing focused on the question of insanity at the time of the offense does not automatically satisfy the hearing requirement. An analysis of the mental condition of the accused at the time of the crime charged may address concerns which are entirely different from the issues involved in determining a person's current mental state. The evaluation itself may differ and, as in the instant case, a substantial period of time may have elapsed.
Further, the acquittee's continuing propensity for danger must be ascertained. The hearing on the issue of sanity at the time of the offensive act may or may not suffice for this. Due process requires that the findings of dangerous propensity and current mental condition "be made following a hearing at which the defendant is present with counsel, *674 has an opportunity to be heard and to present evidence, and has an opportunity to confront and cross-examine witnesses." Powell v. Florida, 579 F.2d [324] at 330 [5th Cir.1978] (citing Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); Bolton v. Harris [395 F.2d 642 (D.C.Cir.1968)])."
For the initial or continued commitment, the Jackson case required a finding of (1) mental illness and (2) a danger to society or himself. Therefore, defendant's counsel argues Perez's continued commitment on the sole finding Perez is a danger to himself or to society is unlawful.
We note, however, the written order signed by the trial judge here states:
"The Court having considered the testimony of the witnesses and the exhibits admitted into evidence concludes that the defendant, RICKY PEREZ, is presently mentally ill and cannot be discharged or released on probation without danger to himself or others." (Emphasis Supplied)
Notwithstanding his oral statements at the conclusion of the trial, in fact the trial judge found Perez was mentally ill and if released would be a danger or menace to society. Hence, the premise upon which the defendant's argument is based, i.e., the trial judge did not find Perez had a mental illness, was wrong. Consequently, the assignment of error is without merit.
We next consider the defendant's contention the record does not support the trial judge's factual conclusion of mental illness and defendant would not be a menace and danger to society if released.
While the focus of the vast majority of the testimony concerned Perez's danger to himself and to society, Dr. Richoux, who had treated Perez since his initial commitment, testified that Perez had a mental disorder described as "Schixo-affective." Additionally, Dr. Dharmay, the other treating psychiatrist, did not say Perez had no mental illness. Rather, his testimony was that Perez would not be a danger to society provided he continued his Lithium treatment and refrained from drugs and alcohol.
Moreover, when the evidence is viewed in its totality, one thing is certain, all witnesses agreed Perez must stay on Lithium, avoid drugs and alcohol, and be constantly tested, supervised and monitored, otherwise, he might again become very dangerous. As was said by Judge Politz in Jackson, supra:
"Under Powell, dangerousness is a determination that does not lie solely within the province of medical opinion; "a state may reasonably allow the judge to play a greater role in making this determination... than he plays in other civil commitment cases." 579 F.2d at 333. In view of Jackson's anti-social act of homicide, the state trial judge was entitled, on this record, to find Jackson to be dangerous. As we observed in Powell:
This past conduct justifies a greater role for the trial judge in determining whether an insanity acquitee remains dangerous to society in order to protect society from similar behavior in the future.

Id. (citing United States v. Ecker, 177 U.S. App.D.C. 31, 543 F.2d 178 (1976), cert. denied, 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977))."
Perez was charged with the extremely antisocial crime of murdering his own father. Additionally, none of the witnesses, experts or lay, could guarantee or give adequate assurances that Perez would not discontinue self-administration of Lithium and/or abuse drugs or alcohol. While all the witnesses believed that Perez would respond to treatment and continue to follow their advice, the testimony of Dr. Richoux eloquently states where the problem lies:
"Q. All right. I note in your report you also state you believe he is not dangerous to himself or others. Would youis your report also recommending that he be released to a mental health clinic type supervision?
A. I think he could be, and I think it could be feasible in the interest of *675 both Mr. Perez and society, although I would like to go on record as saying that I want to differentiate between personally making a request of this Court to release Ricky Perez on probation and, on the other hand, giving the best objective psychiatric opinion I can give when Mr. Perez petitions this Court to release him on probation. I am not an advocate for Mr. Perez. I am a psychiatrist giving the most objective opinion that I can, which is that if the Court chooses to release Mr. Perez on probation, I think it can be done in a feasible way and a way in which the risk of him becoming a danger to himself or to society can be kept at a minimum.
Q. Okay. So you are also thoughor you would be an advocate though that he receive adequate out-patient follow up and refrain from the drug abuse and alcohol abuse also?
A. Absolutely."
While we understand the health care professionals' function and desire is to rehabilitate Perez, the trial judge is the one charged with the weighty decision of determining whether Perez can be returned to society without unreasonable risk or danger. As was pointed out by the trial judge, through his questioning of the treating physician, notwithstanding Perez's presence and treatment at the East Feliciana Forensic Hospital, on several occasions in the past he has reverted to the use of drugs. While we agree Perez is not "grossly psychotic" we cannot say the trial judge erred in concluding Perez was mentally ill and required chemical treatment and abstinence from alcohol and drugs to remain stable and therefore is a danger to himself and to society. Also, we note that the commitment order requires the submission of progress reports to the court every six months. Assuming these reflect continued stability and abstinence from the use of drugs and alcohol the trial judge is in a position to and should consider extending pass privileges to Perez so that he may ultimately be de-institutionalized and return to society as the lapse of time with treatment and abstinence diminish the risk of his reverting to the use of drugs and alcohol. Hence, we affirm his ruling.
AFFIRMED.