498 So.2d 213 (1986)
STATE of Louisiana
v.
Gregory BOULMAY.
No. 86 KW 0634.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
*214 W. Kenneth Klein, Slidell, for relator Boulmay.
William R. Campbell, Jr., Dist. Attys. Office, New Orleans, appeal counsel for the St. Tammany Parish.
Before SAVOIE, ALFORD and JOHN S. COVINGTON, JJ.
SAVOIE, Judge.
Defendant-relator, Gregory Boulmay, appeals the trial court's denial of his release from the Feliciana Forensic Facility at Jackson, Louisiana.
In September, 1977, defendant-relator was arrested and charged with armed robbery and two counts of attempted murder. On August 1, 1980, after being found not guilty by reason of insanity of the crimes charged, he was incarcerated at the Feliciana Forensic Facility. Defendant-relator has remained incarcerated there continuously since then, save for passes of leave to visit his family in the St. Tammany Parish area. Said passes have lasted for up to ten days and have occurred without further incident.
By letter dated January 22, 1986, Dr. Roland S. Dharmay, Clinical Director of the Feliciana Forensic Facility (hereinafter referred to as Facility), advised the trial court that defendant-relator had requested a contradictory hearing to determine if he could be released or discharged on probation from the Facility. In accordance with LSA-C.Cr.P. art. 657, a contradictory hearing was held on March 14, 1986, to make such determination. Thereafter, the trial court issued its written reasons, finding that defendant-relator should not be released or placed on probation but should remain incarcerated at the Facility.
Subsequently, defendant-relator filed a writ of certiorari in which he asked this court to review the correctness of the trial court's determination. Said writ was granted on June 12, 1986.
Defendant-relator asserts that the trial court erred in: (1) ordering him to return to the Feliciana Forensic Facility despite uncontested evidence that he could safely be released on supervised probation, and (2) not releasing him because he was only "chemically sane."

ASSIGNMENT OF ERROR NO. 2
Our supreme court has addressed the issue of "chemical sanity" and its effect on one's release on probation in State v. Hampton, 253 La. 399, 218 So.2d 311 (1969). Therein, the Court held a defendant competent to stand trial in a criminal trial even though a remission of his psychotic symptoms had been achieved only through the administration of tranquillizing drugs. It felt that to look beyond the *215 defendant's condition and find him incompetent because that condition was chemical induced would be to "erase improvement produced by medical science." 253 La. at 403, 218 So.2d at 312. Based thereon, it held that remission occurring because of the administration of medication was of no legal significance.
Herein, the record is replete with expert testimony that at present, defendant-relator poses no danger to society or to himself. Further, it is substantiated that defendant-relator's current condition is in part caused by the treatment received at the Facility. To ignore this medical testimony would be to disregard the fact that the assiduous application of the knowledge of medical service can indeed transform patients into contributing members of society. State v. Collins, 381 So.2d 449 (La. 1980).
Based hereon, we find that the trial court erred in refusing to accept that "chemical sanity" may be a legitimate consideration in favor of probation.

ASSIGNMENT OF ERROR NO. 1
Defendant-relator next asserts that the trial court erred in ordering him confined at the Feliciana Forensic Facility despite uncontradicted evidence that he could safely be released on supervised probation.
LSA-C.Cr.P. art. 657, which relates to the release of persons committed after being found not guilty by reason of insanity, provides that:
After considering the report or reports filed pursuant to Articles 655 and 656, the court may either continue the commitment or hold a contradictory hearing to determine whether the committed person can be discharged, or can be released on probation, without danger to others or to himself. At the hearing the burden shall be upon the committed person to prove that he can be discharged, or can be released on probation, without danger to others or to himself. After the hearing, and upon filing written findings of fact and conclusions of law, the court may order the committed person discharged, released on probation subject to specified conditions for a fixed or indeterminate period, or recommitted to the state mental institution. Notice to the counsel for the committed person and the district attorney of the contradictory hearing shall be given at least thirty-days prior to the hearing.
The trial court must certainly be afforded some degree of discretion in making decisions under this statute. It cannot be read, however, to give the court unbridled power to disregard the evidence or act arbitrarily. It would be meaningless to give a committed person an opportunity to prove that he is not dangerous if the trial court then had the absolute discretion to disregard that proof. State v. Collins, supra.
In the instant case, Dr. Albert V. DeVillier, court appointed examining psychiatrist, testified that based upon his thirty minute interview with defendant-relator and in reviewing his medical record, defendant-relator suffered from chronic undifferentiated schizophrenia. While well oriented as to time, place, person, and situation, defendant-relator was found to need socialization training. His anti-social personality was considered to be slight as compared to those normally seen in persons who have committed such a serious crime. Dr. DeVillier indicated that defendant-relator currently showed no signs of hallucinations or delusions and understood his personal problems, even accepting responsibility for the crimes committed. Opining that he saw no reason to suppose that defendant-relator could not handle stressful situations in civilian life when maintaining his minimal medication level, Dr. DeVillier recommended that defendant-relator be sent to the Southeast Louisiana State Hospital.
When questioned concerning defendant-relator's particular condition, Dr. DeVillier stated that the hallucinations and delusions as experienced by defendant-relator responded well to medication. At present, Dr. DeVillier stated that defendant-relator's hallucinations and delusions were in *216 remission. With respect to socialization training, Dr. DeVillier stated that same was not aided by medication. Noting that the Forensic Unit had no facilities for this socialization process treatment, Dr. DeVillier recommended that civil commitment for said treatment be ordered and carried on at the Southeast Louisiana State Hospital. Dr. DeVillier stated that the socialization program received there would be very beneficial to defendant-relator.
When asked whether he had any recommendation as to whether defendant-relator was dangerous to himself or to others, Dr. DeVillier could make no recommendation. He stated that as long as schizophrenics remain under medication and supervision, they function well in society.
Ms. Catherine Goodman, social worker at Feliciana Forensic Facility, testified that she had worked with defendant-relator from 1980 until approximately four months before the hearing herein. She testified that she had made essentially the same observations as Dr. DeVillier and recommended that defendant-relator be released to his family on probation. Ms. Goodman stated that as long as defendant-relator remained on his medication, she felt he was not dangerous. She testified that defendant-relator diligently took his medication and that on passes to his home, no problems were incurred with defendant-relator taking his medication on time. In talks with defendant-relator's family, Ms. Goodman stated that they seemed very supportive of defendant-relator. She felt they would work well with defendant-relator in maintaining him on his medication and in working closely with the mental health center. Miss Pyrannes Holmes, follow-on social worker to Ms. Goodman, affirmed the testimony and recommendations of Ms. Goodman.
Dr. William Wilkinson, Director of Psychiatric Services at Feliciana Forensic Facility and defendant-relator's primary treating physician, affirmed the aforedescribed testimony. He further related that defendant-relator was one of the most cooperative patients, if not the most cooperative, he had at the facility at that time. Noting the need for advanced treatment and socialization training, Dr. Wilkinson recommended that defendant-relator be released to his family under rigid probationary standards with a continued medication regimen.
Lastly, Mrs. Gardner Boulmay, defendant-relator's mother, testified that defendant-relator had been receiving passes since 1982. She stated that she had seen great progress in her son's condition since taking the medication. Mrs. Boulmay testified that if defendant-relator were to fail to take his medication as required, she would immediately report him to the proper authorities. She noted that while on his passes, defendant-relator was very punctual about taking his medication.
While we agree with the trial court that the release on probation of individuals such as defendant-relator bears close scrutiny, we find that the evidence herein is overwhelmingly convincing. Indefinite confinement, in light of the uncontested evidence that defendant-relator could safely be released on probation or remanded to Southeast Louisiana State Hospital, is contra to the language and intent of LSA-C. Cr.P. art. 657. The proper course herein should be to either release defendant-relator subject to such probationary conditions as would assure his compliance with a prescribed medication regimen or to remand him to the Southeast Louisiana State Hospital for socialization treatment and continued medication. We find that the trial court having failed to do so, erred.
For the reasons assigned herein, the trial court's order returning defendant-relator to Feliciana Forensic Facility is vacated and this case is remanded for further proceedings consistent with the opinion herein.
REVERSED AND REMANDED.