563 So.2d 841 (1990)
STATE of Louisiana
v.
Ricky PEREZ.
No. 89-KK-1703.
Supreme Court of Louisiana.
June 14, 1990.
Clay J. Calhoun, Jr., Clinton, for defendant-applicant.
William J. Guste, Jr., Atty. Gen., John Mamoulides, Dist. Atty., Harold A. Buchler, Jr., Dorothy Pendergast and Thomas G. Wilkinson, Asst. Dist. Attys., Louise Korns, Gretna, for plaintiff-respondent.
MARCUS, Justice[*].
After being found not guilty of second degree murder by reason of insanity, Ricky Perez was committed to a state mental institution. About ten years later, a review panel recommended that he be discharged from the mental institution. After a contradictory hearing, the court denied defendant's application for discharge finding that he was then mentally ill and could not be discharged or released on probation without danger to himself or others. The court of appeal affirmed.[1] On defendant's *842 application, we granted certiorari to review the correctness of that decision.[2]
The issue before us is whether the courts below erred in finding that defendant, who takes medication for mental illness, could not be released without danger to himself or others.
Defendant was indicted by the grand jury for the August 28, 1978 first degree murder of his father, Wesley Perez, in violation of La.R.S. 14:30. He entered a plea of not guilty and not guilty by reason of insanity. When the state amended the indictment to reduce the charge to second degree murder, he waived a trial by jury. After a bench trial, he was found not guilty by reason of insanity. On January 30, 1979, the trial court ordered that defendant be committed to a state mental institution. He was committed to the Feliciana Forensic Facility at Jackson, Louisiana. On September 24, 1981, defendant filed a motion to be granted a release or allowed passes from the facility pursuant to La. Code Crim. P. art. 655(B). After a hearing, the court authorized the facility to begin a program of gradual deinstitutionalization of defendant and to grant passes under close supervision which it deemed medically appropriate. On October 25, 1984, after a hearing, the court ordered that his pass privileges be extended and left to the discretion of the treating physician, but limited to weekend passes only. On May 31, 1985, the court revoked its prior order and ordered that defendant be awarded no further passes.[3] On September 12, 1985, after another hearing, the court ordered that defendant not be released on probation nor on passes. The court concluded that he was mentally ill and could not be released on probation without danger to himself or others. Defendant appealed. The court of appeal affirmed.[4] On August 14, 1986, after a hearing, the trial court granted defendant one weekend pass per month under the guidance of the facility. On July 2, 1987, the court extended the pass privileges to ten days per month. The court ordered that he take a urinalysis test and reside with his mother during each ten-day pass. Because the superintendent of the facility recommended that defendant be discharged or released, a review panel was convened pursuant to La.Code Crim.P. art. 655. On August 31, 1988, the panel issued a report recommending that he be conditionally discharged.[5] After a contradictory hearing on September 29, 1988, the court denied defendant's application for discharge or release on probation and ordered that its previous order of July 2, 1987 remain in full force and effect. The trial court found that defendant was then mentally ill and could not be discharged or released on probation without danger to himself or others. The court of appeal affirmed. We granted defendant's application.
The burden is upon the committed person to prove that he can be discharged, or can be released on probation, without danger to others or to himself. La.Code Crim.P. art. *843 657.[6] "Dangerous to others" means the condition of a person whose behavior or significant threats support a reasonable expectation that there is a substantial risk that he will inflict physical harm upon another person in the near future. La. R.S. 28:2(3). "Dangerous to self" means the condition of a person whose behavior, significant threats or inaction supports a reasonable expectation that there is a substantial risk that he will inflict physical or severe emotional harm upon his own person. La. R.S. 28:2(4).
At the September 29, 1988 hearing, Dr. Charles Vosburg testified that he had a Ph.D. in psychology and was a member of the review panel. He stated that defendant primarily had carried a diagnosis as schizoaffective or chronic schizophrenia, maybe with some sequelae to substance abuse. According to Dr. Vosburg, it was the review panel's impression that defendant's mental illness was in remission, that he no longer was technically mentally ill, and that he no longer was a danger to himself or others. At the time of the hearing, defendant was on medication including twenty milligrams twice a day of Navane, a major tranquilizer or antipsychotic medication, and three-hundred milligrams twice a day of Lithium, which controls the manic process or balances his mood. Additionally, he was on Artane as a side-effect medication. In Dr. Vosburg's opinion, it was a possibility that defendant would be psychotic if he did not take the medication.
Dr. Richard Richoux, an expert in forensic psychiatry who was appointed by the court to review the case, testified that he had known defendant since 1980. When Dr. Richoux interviewed defendant three days before the hearing, Dr. Richoux found that he was not displaying any active evidence of mental illness. He was not psychotic. He was coherent and his thinking was well organized. Dr. Richoux further testified:
It was a result of my examination that I felt as though Mr. Perez understood the necessity of staying on his medication, understood the necessity of regular follow-up according to whatever stipulations the court might see fit to lay down, and that he was absolutely convinced of the necessity of staying away from substance abuse, that he had been staying away from substance abuse consistently, and that all this added up to a recommendation that he probably should be released at this time.
Dr. Richoux did not find defendant to be dangerous to himself or others. Dr. Richoux based that finding on defendant's record of not getting into altercations with other inmates and consistent negative drug screens. At the interview with Dr. Richoux, defendant did not show any signs or symptoms of mental illness, but he had shown signs of a major mental illness before then. Dr. Richoux stated:
[W]hen he was psychotic, he did have some paranoid symptoms, some tendency to distort what was going on around him in a paranoid way, misinterpret events that were taking place around him in a paranoid fashion.... [H]e probably still has the potential or the capacity to develop that type of symptom again in the absence of being treated with medication.
Dr. Richoux elaborated on what would happen if defendant stopped taking the Navane and Lithium:
If he failed to take the Navane and/or the Lithium, my opinion would be that, on an immediate basis, probably nothing would happen. I think that as time went *844 by, however, if an increasing length of time passed, that gradually the chances would become greater and greater that he might begin to display some psychotic symptoms such as he did display in the fairly distant past before being well stabilized on medication.
Three days before the hearing, Dr. Cox, an expert in psychiatry, and Dr. Richoux sent a report to the trial court regarding defendant. The parties stipulated that Dr. Cox would testify consistently with the report, which recommended that defendant be conditionally released.
Defendant's mother, Mrs. Catherine Perez, testified that he gave her no trouble and took his medication during his passes. According to Mrs. Perez, he was kind and got along "real good" with everybody. If he were released, he would stay with her for a while until he could get established. She had worked, but not for the six months prior to the hearing. Her son-in-law had offered him a job, perhaps part-time work in an oilfield. On twelve pass reports, she indicated that defendant seemed to have improved. But in one pass report, discussing a pass from October 24-31 (no year listed), she wrote:
We feel that Ricky was a lot better before they changed his medication. Now he cannot stop with the religion [and] preaching. If you don't listen he gets very agrivated [sic]. Ricky did not want to do anything but sit inside [and] read the bible. He keeps repeating ... over [and] over about the religion. To everyone, not just the family, everyone.
Defendant's sister testified that she would be very pleased if he were released. She further testified:
My brother gets along wonderful with my family, my husband, my husband's family, his oldest brother. I have a four-year-old son, he will be four in November, and he's wonderful with my son; kind, pleasant, no problems. And we love to be around him, and we're happy to have him home with us.
Defendant testified that he was put in the Feliciana Forensic Facility because he "was sick from drugs and alcohol. But I have rehabilitated myself.... I can assure you that ... I will never get back on them, because I know what it's done to my life.... All I want to do is live a normal life and help my mom and my family."
In its written reasons for judgment, the trial court stated that neither Dr. Vosburg nor Dr. Richoux assured the court that defendant would not return to the use of alcohol or drugs if he were released on probation or discharged. Moreover, the court expressed extreme concern that the probation department, due to its case load, would not be able to monitor whether he is refraining from the use of alcohol or drugs or whether he is reporting for treatment. It noted that he could discontinue his medication at any time and revert to his psychotic symptoms and that he could leave the jurisdiction of the court. It found that he was then mentally ill and could not be discharged or released on probation without danger to himself or others. The court of appeal approved of the reasons assigned by the trial court.
This court has considered similar cases of "synthetic sanity," in which a remission of mental disease was accomplished by the continued administration of drugs. State v. Thompson, 387 So.2d 1114 (La.1980); State v. Collins, 381 So.2d 449 (La.1980). In Collins, defendant had been charged with attempted armed robbery and found not guilty by reason of insanity. Finding that defendant posed no danger to society or to himself, we ruled that he should be released on probation. In Thompson, defendant had been charged with two counts of armed robbery and had been found not guilty by reason of insanity. While on probation, defendant had failed to keep appointments at a mental health clinic and had returned to a psychotic state, according to the treating physician. We affirmed the trial court's revocation of defendant's probation and refusal to discharge him or release him on probation. We noted:
The trial judge heard the testimony of the family members who the defense claimed could provide this supervision. He had the opportunity through personal observation to evaluate their qualifications, *845 dedication and ability. He undoubtedly concluded that these family members would not be able to provide the supervision the defendant needed to insure his continued participation in his medical regimen.
Thompson, 387 So.2d at 1116.
In a synthetic sanity case, State v. Rambin, 427 So.2d 1248 (La.App.2d Cir.), writ denied, 433 So.2d 153 (La.1983), defendant had been indicted for murder and found not guilty by reason of insanity. The court of appeal affirmed the trial court's refusal to release defendant, stating:
[W]e are constrained by salient factual distinctions between Collins and the instant case to reach a different result herein. In Collins the applicant had been charged with attempted armed robbery, while in the instant case we are dealing with the more grievous offense of murder. The cases are further distinguished by the demonstrated propensity of our applicant to drink, resist medication, and violate probation. Furthermore in Collins the evidence that the defendant, if medication were discontinued, would suffer a relapse was said to be "tentative." In other words, we find our case to more nearly resemble Thompson than Collins.

Id. at 1253. Rambin emphasized the significance of the murder:
Implicit in the verdict of "not guilty by reason of insanity" ... is the judicial finding that, although Mr. Rambin was insane at the time of the act, he did in fact kill Willie Green.... [T]he fact that Mr. Rambin committed such an act bespeaks an insidious proclivity deeply and inextricably rooted in his now outwardly benign psyches. Mr. Rambin has manifested the capacity to perpetrate the most vicious of human acts, and this fact necessarily plays a predominant role in the dangerousness analysis which is dispositive in granting or denying release.
Id. at 1252-53. In another case involving synthetic sanity, the United States Second Circuit Court of Appeal stated:
Foremost among the evidence before the state courts was the fact that appellant already had committed the most extreme form of violence: the killing of another human being. His acquittal on grounds of insanity constituted proof beyond a reasonable doubt that he once had been a danger to society. While the insanity acquittal did not constitute dispositive proof of present dangerousness, it was substantial evidence that appellant remained a danger to society.
Warren v. Harvey, 632 F.2d 925, 934 (2nd Cir.), cert. denied, 449 U.S. 902, 101 S.Ct. 273, 66 L.Ed.2d 133 (1980).
In the instant case, defendant was tried for the murder of his father and found not guilty by reason of insanity. It is implicit in that finding that defendant committed the murder and did so because of mental illness. Jones v. United States, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). When the crime is a serious one like murder, a court should be especially cautious before releasing an insanity acquittee. At the time of the hearing, defendant took medication twice daily. Both Dr. Vosburg and Dr. Richoux testified that if defendant stops taking his medication, he could become mentally ill again. The trial court was concerned that he could discontinue his medication at any time and that the probation department would be unable to monitor whether he is refraining from the use of alcohol or drugs or reporting for treatment. Under the circumstances, we are unable to say that the trial court abused its discretion in finding that defendant did not prove that he could be released without danger to others or to himself under La.Code Crim. P. art. 657.[7] If he stays *846 on his medication, abstains from drug and alcohol abuse, and continues to do well on his ten-day passes, the trial court may conclude at some future date that he can be released on probation without danger to others or to himself in accordance with its program of gradual deinstitutionalization.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
DENNIS, J., dissents with reasons.
CALOGERO, C.J., dissents for reasons assigned by DENNIS, J.
DIXON, C.J., dissents and assigns reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent. The trial judge was clearly wrong in finding defendant mentally ill at the time of the hearing, in contradiction of all the medical evidence. This Court adds to the error by approving a rule that the original offense, if serious enough, is evidence of a continued dangerous state, especially if there is a possibility that the defendant can discontinue his medication. Under existing statutes, as interpreted here, Perez will never be released, in spite of the pious suggestion that a trial court, some day in the future, might find that defendant can be released without danger to himself or others. As interpreted, our scheme is unconstitutional.
DENNIS, Justice, dissenting.
I respectfully dissent.
Applying the statutory definition of mental illness, La.R.S. 28:2(14), it is manifestly clear that Perez does not suffer from "a psychiatric disorder which has substantial adverse effects on his ability to function and [which] requires care and treatment." Due process will not permit a state to commit or continue to confine someone, civilly or criminally, without proof that he is both mentally ill and dangerous to himself or to society. Jones v. United States, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). See the dissenting reasons assigned in State v. Terry Foucha, ___ So.2d ___ (La. 1990), No. 89-KK-1352. The propensity for danger alone is not sufficient constitutional basis for the confinement of a person not mentally ill in an insane asylum. See Jackson v. Foti, 670 F.2d 516, 522 (5th Cir.1982). Furthermore, the evidence demonstrates clearly and convincingly that Perez does not currently present a danger to himself or others. He has been a model patient for over eleven years. He has been peaceful, law abiding and cooperative. He has successfully functioned in society as a peaceful, law abiding citizen while on many weekend and ten day passes. He has the support of a loving and supportive family. He has faithfully complied with submission to drug tests as a condition of his release on passes and has thereby demonstrated that he is likely to continue to do so as a condition of his probation. In the event he violates this condition or any other, or in *847 the event his family feels he is in danger of relapse, he may be reconfined for treatment in a mental institution. Considering Perez's success for a period of eleven years in functioning peacefully and effectively as a patient and as a citizen and family member while being released on passes, the district court clearly and manifestly erred in concluding that Perez would be a danger to himself or others even under supervised probation.
NOTES
[*] Retired Chief Justice John A. Dixon, Jr. participated in this case, having been a member and Chief Justice of this court when the case was orally argued and taken under advisement.
[1] 548 So.2d 6 (La.App. 5th Cir.1989).
[2] 550 So.2d 620 (1989).
[3] The court of appeal later stated: "Although the record does not contain the motion or a transcript of the hearing, testimony in a subsequent hearing shows the pass privileges were revoked at the request of Perez's treating physician due to the institution of Lithium treatments." State v. Perez, 487 So.2d 671, 672 (La.App. 5th Cir.), writ denied, 489 So.2d 245 (La.1986). However, the state asserted in its brief that the court stopped the passes on its own motion after it was discovered that defendant had used alcohol and illegal drugs. Moreover, defense counsel admitted in oral argument that the passes were revoked after defendant had a positive drug screen.
[4] State v. Perez, 487 So.2d 671 (La.App. 5th Cir.), writ denied, 489 So.2d 245 (La.1986).
[5] The panel recommended that defendant be discharged with the following recommendations:

1. He be placed on probation, the length to be determined by the court.
2. He attend the local mental health center for follow-up care.
3. He submit to routine random drug screens at the local mental health center.
4. He continued to take all medication as prescribed by his treatment physician.
5. He be actively employed, seeking employment or attending a vocational rehabilitation program.
6. He abstain from intoxicating or mind-altering substances.
[6] La.Code Crim.P. art. 657 provides:

After considering the report or reports filed pursuant to Articles 655 and 656, the court may either continue the commitment or hold a contradictory hearing to determine whether the committed person can be discharged, or can be released on probation, without danger to others or to himself. At the hearing the burden shall be upon the committed person to prove that he can be discharged, or can be released on probation, without danger to others or to himself. After the hearing, and upon filing written findings of fact and conclusions of law, the court may order the committed person discharged, released on probation subject to specified conditions for a fixed or an indeterminate period, or recommitted to the state mental institution. Notice to the counsel for the committed person and the district attorney of the contradictory hearing shall be given at least thirty days prior to the hearing.
[7] Defendant challenges La.Code Crim.P. art. 657 on constitutional grounds. He argues that the dangerousness test violates due process and equal protection. We held that the dangerousness test is constitutional in State v. Foucha, 563 So.2d 1138 (La.1990). However, defendant argues that because "the determination of dangerousness is not a question about which the current level of science and knowledge has obtained competency," the dangerousness standard violates due process and equal protection. The United States Supreme Court rejected a similar argument in Jones:

[Defendant] argues that the available research fails to support the predictive value of prior dangerous acts. We do not agree with the suggestion that Congress' power to legislate in this area depends on the research conducted by the psychiatric community. We have recognized repeatedly the "uncertainty of diagnosis in this field and the tentativeness of professional judgment. The only certain thing that can be said about the present state of knowledge and therapy regarding mental disease is that science has not reached finality of judgment...." Greenwood v. United States, 350 U.S. 366, 375 [76 S.Ct. 410, 415, 100 L.Ed. 412] ... (1956). The lesson we have drawn is not that government may not act in the face of this uncertainty, but rather that courts should pay particular deference to reasonable legislative judgments.
Jones, 463 U.S. at 364 n. 13, 103 S.Ct. at 3050 n. 13 (citations omitted).
Next, defendant argues that La.Code Crim.P. art. 657 is unconstitutional because it places the burden of proof on the insanity acquittee. We disagree. "[T]he placement of the burden of proof on the insanity acquittee at the release hearing does not violate either the equal protection clause or the due process clause." Benham v. Ledbetter, 785 F.2d 1480, 1491-92 (11th Cir. 1986).
Finally, defendant argues that La.Code Crim.P. art. 657 is unconstitutional because it fails to provide a standard of proof for release applications. This argument has no merit. There is no constitutional requirement that statutes specify a standard of proof. The standard of proof applied in this case satisfies due process.