CHEHARDY, Chief Judge.
Ricky Perez, an insanity acquittee confined in a state facility for the criminally insane, comes before us on a writ of review of the trial court’s ruling denying him discharge or release on probation.
HISTORY
On January 29, 1979, Ricky Perez was found not guilty by reason of insanity of the crime of second-degree murder of his father, Wesley Perez. Pursuant to a finding that the defendant was dangerous to himself and others, as required by LSA-C. Cr.P. art. 654, he was committed to East Louisiana State Hospital Forensic Unit, now known as Feliciana Forensic Facility, at Jackson, Louisiana. He has remained in the custody of that institution since then.
In 1981, Feliciana was ordered to begin a program of gradual deinstitutionalization of Perez. Thereafter he was granted occasional pass privileges, allowing him to' leave the hospital premises for gradually increasing periods under supervision. Feliciana was ordered to report to the court every 30 days on Perez’ progress under this plan.
In May 1985, on its own motion, the district court revoked Perez’ pass privileges, pending further orders of the court. In September 1985, after a contradictory hearing regarding his sanity, the district court concluded he was mentally ill and could not be discharged or released on probation without danger to himself or others. The court ordered that he be recommitted to Feliciana, that he not be released on passes, and that the superintendent of Feli-ciana submit a written progress report to the court every six months.
Perez appealed that ruling, which was upheld by this court. State v. Perez, 487 So.2d 671 (La.App. 5 Cir.1986), writ denied 489 So.2d 245 (La.1986).
In 1986, Perez filed a motion for reinstatement of pass privileges. Following a hearing and review of reports submitted by a sanity commission, the district court ordered that Perez be allowed one weekend pass every month. In 1987, in response to Perez’ motion for extended pass privileges, the district court ordered that his pass privileges be extended to 10 days per month, with additional requirements that he undergo periodic testing for drug and alcohol use, that he reside with his mother during his passes, and that Feliciana investigate periodically to insure Perez was complying with the conditions.
In September 1988 Perez filed a petition for writ of habeas corpus and application for discharge or release on probation from his psychiatric commitment. A sanity com *8 mission was appointed and submitted reports to the district judge. After a hearing, the matter was taken under advisement. On November 16, 1988, the district court denied the application, without assigning reasons.
Following a writ application by Perez, this court ordered the district court to submit written reasons for the denial of the motion. On December 22,1988, the district court rendered written reasons as ordered.
In his reasons the judge pointed out that, to obtain discharge or release on probation, LSA-C.Cr.P. art. 657 requires that the committed person prove he can be discharged or released on probation without danger to himself or others. After discussing the testimony of the members of the psychiatric review panel convened at the hospital pursuant to LSA-C.Cr.P. art. 655, the judge stated:
“[Among] the recommendations of the review panel are that Perez be placed on probation, that he continue to take all medication as prescribed by his treating physician. This Court is extremely concerned that the Probation Department, due to its case load, would not be able to monitor whether Perez is refraining from the use of alcohol or drugs or whether he is reporting for treatment. Moreover, there is great concern over the fact that Mr. Perez could discontinue his medication at any time and revert to his previous psychotic symptoms. Additionally, he could leave the jurisdiction of the Court and there could be no supervision of him by the Court.
“After a careful review of the evidence adduced at the hearing it is the conclusion of this Court that Ricky Perez has not carried his burden of proof. Further, that Ricky Perez is presently mentally ill and cannot be discharged or released on probation without danger to himself or others.”
Thereafter we granted Perez’ application for a writ of review and ordered that the matter be placed on the appellate docket.
EVIDENCE
In its report the review panel stated it found Perez to be “no longer a mentally ill person as defined by La.R.S. 28:2(14)” and “no longer dangerous to others or to himself as defined by La.R.S. 28:2(3) and (4), and recommended he be discharged with the following recommendations:
“1. He be placed on probation, the length to be determined by the court.
2. He attend the local mental health center for follow-up care.
3. He submit to routine random drug screens at the local mental health center.
4. He continue to take all medication as prescribed by his treatment physician.
5. He be actively employed, seeking employment or attending a vocational rehabilitation program.
6. He abstain from intoxicating or mind-altering substances.”
At the hearing Charles Vosburg, Ph.D., a member of the Feliciana review panel, testified the panel issued its report on August 22, 1988. He stated it was the panel’s impression that Perez’ mental illness was in “outstanding remission,” that “technically, he was [not] continuing to be mentally ill,” and that “he was no longer a danger to himself or others.” He stated that by “technically not mentally ill” he referred to the fact that Perez’ condition is controlled by medication. He stated Perez has been prescribed Navane, 40 milligrams a day, “a major tranquilizer or antipsychotic medication”; Lithium, 600 milligrams a day, “which maintains his remission or helps him to stay in remission”; and Artane, to control side effects of the other medications.
Dr. Vosburg stated that if Perez is released from Feliciana, he will have to pay for his own medication and also for psychiatric treatment, if he chooses to be treated by a private psychiatrist rather than by the local mental health center. Vosburg testified further that Perez had cooperated in undergoing drug screens while on passes and he assumed Perez will continue to cooperate once released. The results of the *9 drug screens, which were negative, were filed into evidence.
Dr. Yosburg admitted that Feliciana will have no access to Perez if he is discharged on probation and that it is possible he will become psychotic if he discontinues his medication.
Dr. Vosburg also stated that Perez’ records indicate he dropped out of school after the ninth grade and that his I.Q. is 83, which is in the “low average range of intellectual functioning.” His psychiatric condition has been diagnosed primarily as either schizoaffective disorder or chronic schizophrenia.
The next witness was Richard Richoux, M.D., a member of the sanity commission appointed by the district court to examine Perez for purposes of this hearing. Dr. Richoux testified he and Dr. Aris Cox, both forensic psychiatry consultants, examined Perez on September 26, 1988. Dr. Richoux has been acquainted with Perez since 1980. His conclusion following this examination was that Perez “was functioning as well as I’ve ever seen him from a psychiatric point of view_not displaying any active evidence of mental illness at that time.” He stated that Perez was not psychotic, he was coherent, his thinking was well-organized, he was able to engage in a rational discussion.
Dr. Richoux pointed out that Perez had spent approximately 40% of his time at home in the previous 17 months due to the 10-day-per-month passes he had been allowed. Dr. Richoux felt that Perez understood the necessity of staying on his medication and receiving regular follow-up treatment. He felt Perez was “absolutely convinced of the necessity of staying away from substance abuse” and pointed out he has consistently refrained from substance abuse. Dr. Richoux stated these factors resulted in a recommendation that Perez “probably” should be released.
Asked whether he made a specific finding as to whether Perez was technically mentally ill, Dr. Richoux carefully replied, “I don’t think as of [the date the sanity commission examined him] he was showing any signs or symptoms of mental illness that can really be documented. You know, certainly he has shown signs of a major mental illness in the past.”
Dr. Richoux stated he did not consider Perez, “at the present time” to be “dangerous to self or others.” He based this conclusion on information that Perez had been an “exemplary” patient at the forensic facility even before being granted passes, in that he did not fight or get into altercations with other inmates; he had no problems at home while out on pass despite his greater freedom of movement during those times; and he had consistently negative drug screens every time he returned from pass.
Based on these factors, Dr. Richoux stated, he recommended that Perez be released subject to conditions carefully established for follow-up of drug screening and regular psychiatric care.
Asked what will result if Perez fails to take his prescribed medications, Dr. Ri-choux testified that, as an increasing length of time passes, chances are greater that he will begin to display psychotic symptoms. Dr. Richoux stated that when Perez was psychotic in the past he had some paranoid symptoms, “some tendency to distort what was going on around him in a paranoid way, misinterpret events that were taking place around him in a paranoid fashion.”
Asked by the judge whether Perez still has this condition but the medication covers it up, Dr. Richoux said,
“I think it would be fair to say, Your Honor, that he probably — and we have to say probably, because the only proof would be stopping the medication — but he probably still has the potential or the capacity to develop that type of symptom again in the absence of being treated with the medication.”
Following Dr. Richoux’s testimony, it was stipulated that if Dr. Aris Cox, the other member of the sanity commission, were to testify, his testimony would be consistent with the findings in the sanity commission’s written report of September 26, 1988.
*10 The findings of that report are as follows:
“At this time Mr. Perez is in excellent remission from his underlying psychiatric illness. He is maintained on Navane, Lithium and Artane. In addition, he has been on numerous passes in the last 10 years and has returned from each of these free of illegal drugs or alcohol, as indicated by his urine screens. He also has completed the AA Program at the Feliciana Forensic Facility twicp. Mrs. Perez indicates that Rickey has been a model son when home, has obeyed his commands and requests strictly and has not engaged in any use of alcohol or drugs or in any aggressive or antisocial behavior. He now has a track record of going home on passes with his family for at least the last four years.
“At this point, we are prepared to recommend that this man be released to the custody of his mother. The conditions of his probation should be that he be ordered to live with his mother and that he be followed by a substance abuse clinic in either Orleans or Jefferson Parish which would screen his urine frequently to make sure he remains free of the use of drugs or alcohol. He also should engage in regular psychiatric treatment. Mr. Perez indicated he would prefer to seek psychiatric treatment from a private psychiatrist, and this is fine with us. It should be clear, however, that this physician should keep the court informed monthly as to Mr. Perez’ progress and also should inform the court if any deterioration in his condition occurs. It should be understood by all that if Mr. Perez abuses drugs or alcohol or fails to keep appointments with the psychiatrist, does not take prescribed medication or engages in antisocial behavior, he is to be remanded back to the custody of the Feliciana Forensic Facility.
“We believe that if these stipulations are enforced, Rickey Perez can be released to the community without danger to self or others.”
Catherine Perez, Ricky’s mother, testified that Ricky had had no problems while at home on his passes and that he can live with her if he is released on probation. Both Mrs. Perez and her daughter, Ricky’s sister, testified that he will have a part-time job if he is released.
As mentioned above, the judge denied Perez’ motion on the basis that both doctors had testified Perez might become psychotic if he does not continue his medication; that neither doctor could assure him Perez would not revert to substance abuse if released; that the probation office would be unable to monitor Perez properly due to its case load; and that Perez might leave the court’s jurisdiction if released.
ASSIGNMENT OF ERROR NO. 1
The relator asserts the trial court committed reversible error in holding that release should be precluded when remission of a mental illness is achieved through the administration of medications, in light of uncontested evidence that relator was in good, stabilized remission through the administration of medication and could be safely released from incarceration at the forensic facility.
ASSIGNMENT OF ERROR NO. 2
The relator asserts it was error for the trial court to disregard uncontroverted evidence of proven compliance with a medication regime, proven successful completion of numerous passes from the hospital, and proven refrainment from use of drugs and alcohol while on passes, and deny release to relator on unfound hypotheses of relapse, flight from jurisdiction of the court, or inability of probation department due to its case load to monitor conditions' of probation.
In these assignments of error the defendant alleges the trial court erred in denying his motion for release given the uncontro-verted evidence finding him “chemically sane” and not a danger to himself or others.
LSA-R.S. 28:59(A) provides that any person acquitted of a crime by reason of insanity may be committed to the proper institution in accordance with Code of Criminal Procedure Arts. 654 et seq.
Under LSA-C.Cr.P. art. 654, when a defendant in a felony case is found not guilty *11 by reason of insanity, if the court determines the defendant cannot be released without danger to others or to himself it shall order him committed to an approved mental institution.
LSA-C.Cr.P. arts.-655, 656 and 657 establish procedures for handling applications for discharge or release on probation of insanity acquittees. The burden of proof is on the committed person to prove that he can be discharged, or can be released on probation, without danger to others or to himself.
The relator argues that an insanity ac-quittee must be discharged or released on probation even if he is only “synthetically sane” (i.e., his sanity is achieved only through medication) as long as he is not a danger to himself or others. See State v. Collins, 381 So.2d 449 (La.1980).
More must be considered here, however, than blanket statements by these psychiatric examiners that the applicant is “not dangerous to self or others”:
“The determination of whether an insanity acquittee poses a danger to himself or others is not, in the context of evaluating an acquittee’s application for manumission, a strictly psychiatric one. The conclusion called for by the law in this instance is not medical, but a legal one. It involves not merely psychiatric findings, but rather the application of legal standards to those findings, the interpretation according to principles of law of those findings. If this were not the case, doctors — and not district judges — would have the legal authority to render discharge decrees.”
State v. Rambin, 427 So.2d 1248, 1253 (La.App. 2 Cir.1983), writ denied 433 So.2d 153 (La.1983).
Among the considerations here is that, unlike the applicant in the Collins case, supra, the relator in this case was charged with second degree murder. As stated in Rambin, supra, at 1252, “Implicit in the verdict of ‘not guilty by reason of insanity’ * * * is the judicial finding that, although [the acquittee] was insane at the time of the act, he did in fact kill [the victim].”
“Assuming the validity of this finding * * *, [the acquittee] violated the most fundamental prohibition of natural and positive law. * * * [T]he fact that [the acquittee] committed such an act bespeaks an insidious proclivity deeply and inextricably rooted in his now outwardly benign psyche. [The acquittee] has manifested the capacity to perpetrate the most vicious of human acts, and this fact necessarily plays a predominant role in the dangerousness analysis which is dis-positive in granting or denying release.”
State v. Rambin, supra, at 1252-1253.
The act of murder is a violation of human nature; it is especially heinous when the victim is the murderer’s own parent. Although the perpetrator was not legally responsible due to his mental illness, it is the duty and function of the trial judge to weigh these factors and the interests of society against the interest of the insanity acquittee in achieving freedom.
As has been acknowledged in a multitude of decisions, the appellate court’s review of a “cold record” can never replace the trial judge’s personal observation and evaluation of the live witnesses. The trial judge must combine his legal knowledge and reasoning powers with his inborn instinct for analyzing human nature.
DECREE
Weighing all these factors and the evidence before us, we cannot say the trial court erred in refusing to allow Ricky Perez to be released on parole. We approve the reasons assigned by the court for its decision.
As we stated on the relator’s prior appeal, “While we understand the health care professionals’ function and desire is to rehabilitate Perez, the trial judge is the one charged with the weighty decision of determining whether Perez can be returned to society without unreasonable risk or danger.” State v. Perez, supra, at 675.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.