CANNELLA, Judge.
By bill of information filed December 10, 1984, appellant, Louis D. Boudreaux, was charged with attempted first degree murder of three persons in violation of LSA-R.S. 14:27-14:30. Boudreaux appeared for arraignment on January 4, 1985. He entered a plea of not guilty and not guilty by reason of insanity. After a sanity hearing on January 10, 1985, the trial court found him mentally incompetent to stand trial and committed him to a state mental facility for treatment. Eight months later, another sanity hearing was conducted, and Bou-dreaux was found mentally competent to stand trial. That finding was duplicated in another sanity hearing held on September 18, 1986. The case proceeded to a bench trial, after which the trial judge found him not guilty by reason of insanity. Bou-dreaux was placed on active probation for five years, subject to specific conditions. Less than three months later the probation department filed a rule to revoke Bou-dreaux’s probation, alleging numerous violations of the conditions of his probation.
Boudreaux was arrested on a warrant obtained by the probation department and held over for a revocation hearing. After hearing the rule, the trial court revoked Boudreaux’s probation and recommitted him to a forensic facility for treatment. On July 27, 1989, the trial court denied Boudreaux’s request for release and transfer to a group home. The court issued an order on January 3, 1990, terminating Bou-dreaux’s probation unsatisfactorily, and he *451 remained in treatment at the state forensic facility. On January 25, 1991, the facility’s review panel recommended that Boudreaux be discharged, subject to stated conditions. After a hearing on the matter on February 14,1991, the trial court refused to order his discharge from the state mental facility. Instead, the court ordered Boudreaux recommitted for further treatment. Bou-dreaux herein appeals the trial court’s refusal to order his discharge from the forensic facility. An ex parte motion for appeal was granted on March 7, 1991. A Review Panel Report dated May 3, 1991 was sent to the trial judge. The trial judge followed the recommendations in the report and, by order dated May 14, 1991, transferred Bou-dreaux to Southeast Louisiana State Hospital. For the reasons stated below we affirm the trial court’s ruling in this matter.
The ruling appealed from by the insanity acquittee is not a “final judgment or ruling” subject to appeal under La. C.Cr.P. art. 912. Boudreaux’s proper remedy is to apply to this Court for a writ of review. La.C.Cr.P. art. 912.1 C(l). However, in the interest of judicial economy, this Court has on occasion considered such an improper appeal as an application for supervisory writs. State v. Cologne, 562 So.2d 24 (La.App. 5th Cir.1990).
Here, judicial economy would best be served by allowing the defendant to have his appeal treated as an application for a supervisory writ to this Court.
FACTS
Louis Boudreaux, an insanity acquittee confined to a state mental facility, challenges a trial court’s ruling denying him a discharge from the facility. His commitment stems from a shooting incident which occurred at his family residence on December 3, 1984. Having spent the evening out drinking, Boudreaux returned home and became violently argumentative with several family members. The police were summoned to restore order. When the officers left, Boudreaux went to his bedroom and armed himself with a handgun. He then stood at the doorway of another bedroom in the house and began firing at his relatives. Three persons were wounded, including Boudreaux’s brother and sister.
After several months of psychiatric treatment in a state facility, Boudreaux went on trial for attempted first degree murder and was found not guilty by reason of insanity. The trial judge then convened a hearing to determine whether Boudreaux presented a danger to himself or others. Based on the findings and recommendation of two psychiatrists, the trial court released Boudreaux from confinement and placed him on active probation for five years, subject to the following conditions:
1) No criminal activity;
2) No use or abuse of alcohol or illegal drugs;
3) Periodic monitoring by a mental health unit; and
4) Obtaining full-time employment.
To facilitate compliance with this last condition, the trial court authorized Bou-dreaux to accept employment with his uncle in California. However, as a result of Boudreaux’s disruptive behavior and his refusal to seek mental health care, the trial court was forced to revoke this work authorization within a few weeks of the issuance. Boudreaux returned to Louisiana, where he attempted to set fire to his mother’s residence. The trial court therefore revoked his probation and committed him to Feliciana Forensic Facility at Jackson, Louisiana, on April 20, 1987. Boudreaux underwent treatment at that facility for several years.
In July of 1990, the trial judge authorized five-day passes from the facility. On January 25, 1991, the Review Panel for the Feliciana Forensic Facility forwarded to the trial court a written recommendation that Boudreaux be conditionally discharged.
The trial court conducted a hearing on February 14, 1991, and rejected the Review Panel’s recommendation by order dated February 15, 1991. Subsequent to denying Boudreaux’s discharge, the trial court ordered his transfer from Feliciana Forensic Facility to the less restrictive Southeast Louisiana State Hospital. Boudreaux cur *452 rently remains in treatment at the hospital under the order of an involuntary civil commitment.
ASSIGNMENT OF ERROR NUMBER ONE
The defendant avers that the trial court erred in ruling that he remains mentally ill and a danger to himself or others, thus denying his release from the custody of state institutions. ■
La.C.Cr.P. art. 657 which provides the method and conditions for release of persons committed to a mental institution after being found not guilty by reasons of insanity, states that:
After considering the report or reports filed pursuant to Articles 655 and 656, the court may either continue the commitment or hold a contradictory hearing to determine whether the committed person can be discharged, or can be released on probation, without danger to others or to himself. At the hearing the burden shall be upon the committed person to prove that he can be discharged, or can be released on probation, without danger to others or to himself. After the hearing, and upon filing written findings of fact and conclusions of law, the court may order the committed person discharged, released on probation subject to specified conditions for a fixed or an indeterminate period, or recommitted to the state mental institution. Notice to the counsel for the committed person and the district attorney of the contradictory hearing shall be given at least thirty days prior to the hearing.
The essential element for discharge or release on probation is proof that the insanity acquittee can be released without danger to himself or others. State v. Breland, 495 So.2d 366 (La.App. 3rd Cir.1986). While the burden of proof lies with the committed person, and the trial court must be afforded some degree of discretion, the statute cannot be read to give the court unbridled power to disregard the evidence or to act arbitrarily. State v, Collins, 381 So.2d 449 (La.1980). Indeed, it is error for the trial court to deny release where the evidence is uncontested that the insanity acquittee can be safely released on probation subject to conditions insuring that he follow a prescribed medical regimen. State v. Collins, supra at p. 451.
The facts and procedural history of the matter at hand do not dictate that the trial court ignored the evidence or acted arbitrarily in ruling that the defendant remained mentally ill and a danger to himself or others. Thus, the trial court denied Boudreaux’s release from the custody of state institutions.
Two psychiatrists familiar with the defendant’s mental condition testified at the discharge hearing. Dr. Kenneth Ritter stated that Boudreaux was undergoing treatment for schizophrenia, which he believed, at that time, to be in remission. As part of that treatment, he was required to take a medication described by Dr. Ritter as a combination tranquilizer and antidepressant. However, unlike the situation in State v. Collins, Dr. Ritter testified that should Boudreaux fail to take his medication as prescribed, his condition would deteriorate to the point where he would become dangerous to himself and to others. Dr. Ritter also testified that the consumption of alcohol by Boudreaux could induce further psychotic episodes. Dr. Ritter stated further that the remission in Bou-dreaux’s condition was partially due to the structured environment of the forensic facility, which would cease once he was released. Dr. Genevieve Arneson, the other psychiatrist who testified at the hearing, agreed with Dr. Ritter’s observations.
After considering the testimony and evidence, the trial court denied Boudreaux’s release and ordered him recommitted to the forensic facility, citing the following reasons:
This Court recognized that the panel has found Mr. Boudreaux presently “chemically sane” and capable of functioning in the community, however, the intense need for Mr. Boudreaux to remain on medication in order to function, the severe possible consequences if he does not remain on the medication, the relatively short track record of his re *453 maining on treatment, and finally, his failure in the past does not convince this Court that Mr. Boudreaux would not be a danger to himself or to others if released.
In State v. Perez, 548 So.2d 6 (La.App. 5th Cir.1989), writ granted, 550 So.2d 620 (La.1989), affirmed, 563 So.2d 841 (La.1990), the Fifth Circuit reviewed a case closely analogous to the present one. Contrary to the recommendation of a psychiatric review panel, the trial court in Perez refused to release an insanity acquittee on conditions very similar to those formulated by the review panel in this case. The trial judge presiding over the Perez case stated that he was not convinced that the insanity acquittee might not become a danger to himself or others, particularly if the insanity acquittee failed to continue his medication. Perez, supra at p. 10. The Fifth Circuit affirmed the lower court ruling, observing:
As has been acknowledged in a multitude of decisions, the appellate court’s review of a “cold record” can never replace the trial judge’s personal observation and evaluation of the live witnesses. The trial judge must combine his legal knowledge and reasoning powers with his inborn instinct for analyzing human nature.
Perez, supra at p. 11.
The appellate panel in Perez highlighted the distinction between the desire of health care professionals to rehabilitate an insanity acquittee and the responsibility of the trial judge to decide whether he can be returned to society without unreasonable risk or danger to himself or others.
Considering the record herein, there exists no justification for this Court to set aside the trial judge’s denial of discharge. The trial judge evaluated the evidence presented at the discharge hearing and ruled against Boudreaux, amply setting forth his reasons for that ruling. The fact that the trial judge reached a conclusion different from that desired by Boudreaux does not establish that the judge ignored the evidence or acted arbitrarily. State v. Collins, supra. Moreover, the fact that the trial court continued to monitor Bou-dreaux’s progress and subsequently converted his criminal commitment to a less restrictive civil commitment bears witness to the trial court’s well-reasoned decision in this matter. The ruling now challenged by the insanity acquittee was proper, and is therefore affirmed by this Court.
ERROR PATENT
La.C.Cr.P. art. 920 provides, “the following matters and no others shall be considered on appeal: (1) an error designated in the assignments of error; and (2) an error that is discoverable by a mere inspection of the pleadings and proceedings are without inspecting the evidence.” A review of the record in this case does not disclose any errors patent.
Accordingly, the judgment of the trial court is hereby affirmed.
AFFIRMED.