11 GORBATY, Judge.
On November 19, 1981, the defendant, Arthur Smith, was indicted on two counts of first-degree murder in violation of La. R.S. 14:30. A sanity commission was requested on December 4, 1981. The defendant was deemed incompetent and sent to Feliciana Forensic Facility on March 3, 1982. A subsequent sanity commission was requested on July 30, 1982. The defendant was found competent to stand trial on September 30, 1982. Another sanity hearing was held on May 19, 1983 at which the defendant was found competent to stand trial. After a jury trial on June 17, 1983, the defendant was found not guilty by reason of insanity on both counts. A sanity commission was appointed on June 26, 1983. After a hearing on July 12, 1984, the defendant was committed to Feliciana Forensic Facility. A sanity commission was requested on May 29, 1986. On June 26, 1986, the defendant was determined to be a danger to himself and others and remanded to Feliciana Forensic Facility. Another sanity commission was requested on June 9, 1987. At the hearing on July 14, 1987, the defendant was found to be a danger to himself and others and remanded to Feliciana Forensic Facility. The defendant requested another sanity commission on January 28, 1988. After a sanity hearing on April 4, 1988, the defendant was determined to be a danger to himself and | {¡others and remanded to Feliciana Forensic Facility. On July 12, .1998, the defendant was continued in the custody of Feliciana Forensic Facility. Another sanity commission was requested on November 23, 1989. On December 5, 1989, the defendant was determined to be dangerous to himself and others and remanded to Feliciana Forensic Facility. Another sanity hearing was held on October 9, 1990. At this hearing, the defendant was again found to be a danger to himself and others and remanded to Feliciana Forensic Facility. On October 29, 1992, the defendant was transferred to the civil section of the East Louisiana State Mental Hospital. The defendant requested another sanity commission on August 8, 1995. At the hearing on September 13, 1995, defendant’s treating psychiatrists and psychologists recommended that the defendant be placed in a group home. The trial court denied the request and concluded that the defendant was still a danger to himself and others. On February 4, 1999, the defen *54 dant requested a hearing to determine his eligibility for a transfer to a group home. The trial court took the matter under advisement after a hearing on March 2,1999. A subsequent hearing was held on September 28, 1999. After hearing testimony from the defendant and his treating psychiatrists, the trial court denied defendant’s request for a transfer to a group home. Defendant subsequently filed this appeal.

ASSIGNMENT OF ERROR NUMBER ONE

The defendant argues that the trial court abused its discretion when it denied his request for placement in a group home. The defendant contends that the testimony of his treating psychiatrists support the conclusion that he is no longer a danger to himself and others and that the transfer to the group home is the most appropriate step in his treatment.
|aIn denying the defendant’s request, the trial court stated:
The Court has reviewed it’s [sic] own notes from the testimony taken in March of '99 from Dr. Richoux and has gone through the file in this case with Mr. Smith, who was, as you said, adjudicated not guilty by reason of insanity for a double homicide. This Court is well aware what Foucha said and what Fou-cha directs we as Judges to contemplate when we are ruling on these cases, but that’s not taken in a vacuum and I know that Mr. Smith is doing fine now, because he’s on medication which he should be very grateful for, he’s responding to unlike a lot of other inmates that don’t respond to it and therefore are systematic. But I do find that Mr. Smith does still suffer from a mental illness or defect, otherwise, he would not be on Navane or Nuvane, however it’s pronounced. And that Dr. Richoux testified on [sic] March of 1999 and that it’s only because of this medication that the symptoms, the psychiatric symptoms are suppressed. If he was not on that medication or was not in a structured environment where he knows he has to take the medication or passes wouldn’t be granted or the privileges of passes will be revoked, he would have those symptoms actively, manifesting themselves as he himself testified to today where he hears voices and has hallucinations when that medication goes awry or when he’s taken off of it. Because of that the Court is going to continue Mr. Smith in the custody of Feliciana Forensic denying East Feliciana Forensic denying the request to grant a conditional release into Harmony Transitional Center. Mr. Smith, I know you have been here many times over the years with different Judges and different rulings and the hope of being given some relief. However, my strong advice to you is that you continue doing what you’ve been doing. You’re on the passes, do what you’re supposed to do and take your medication, because it is a privilege that you have to get out on passes like you are and go to New Orleans to stay with your family and see your family. A privilege that many people don’t have either at East Feliciana or in the Department of Corrections after they’re convicted of the kind of crime that you were convicted of. The Court will continue the granting of the passes as currently in place, but denying (sic) the order granting conditional release.
La.C.Cr.P. article 654 provides that “[w]hen a verdict of not guilty by reason of insanity is returned in a capital case, the court shall commit the defendant to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment.” La.C.Cr.P. articles 655-657 deal with additional mental examinations and contradictory hearings concerning a defendant’s discharge and/or release after his original commitment. Article 657 states that a trial court, after reviewing reports submitted in accordance with Articles 655 and 656, “may either continue the commitment or hold a contradictory ^hearing to deter *55 mine whether the committed person is no longer mentally ill as defined by R.S. 28:2(14) and can be discharged, or can be released on probation, without danger to others or himself as defined by R.S. 28:2(3) and (4).” The State bears the burden at the hearing to prove by clear and convincing evidence that the defendant is currently both mentally ill and dangerous. La. C.Cr.P. article 657; Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992); State v. Perez, 94-0130 (La.1/27/95), 648 So.2d 1319; State v. Boudreaux, 605 So.2d 608 (La.1992). La.C.Cr. P. articles 657.1 and 657.2 provide the criteria for conditional release.
State v. Perez, supra, is strikingly similar to the present case. In Perez, the defendant had been found not guilty by reason of insanity in the murder of his father in 1979. He was committed to Feli-ciana Forensic Facility after the insanity acquittal and received treatment for schizophrenia. In 1992, the defendant sought conditional release and/or probation. The trial court denied the defendant’s request, finding that the State met its burden of proving that the defendant was mentally ill and a danger to himself and others. The trial court found that the medication the defendant took “merely masked” his schizophrenic illness. The trial court also concluded the defendant was a danger to himself and others because there was a “75 per cent chance that [the defendant] would revert back to his prior condition [if he discontinued his medication] when we know that there was violence involved at that time.” The appellate court affirmed, finding that the trial court did not abuse its discretion in denying the defendant’s request. The Louisiana Supreme Court reversed, concluding that the State did not prove by clear and convincing evidence that the defendant was a danger to himself and/or others. In so holding, the Supreme Court reviewed the testimony of the defendant’s |5treating psychiatrists. Drs. Ritter and Vosberg testified that the defendant’s schizophrenic illness had been in remission for several years and that the defendant presented no imminent danger to himself or others. In early 1985, the doctors of the forensic facility determined that the defendant’s mental illness “would receive no further benefit by continued treatment at the hospital.” Dr. Ritter acknowledged that the defendant would probably decompensate if he discontinued his medication. He stated that he could not predict with medical certainty the distant future if the defendant discontinued his medication for a significant period of time and relapsed into overt schizophrenic symptoms. The defendant’s treating psychiatrists stated that the defendant acknowledged his need for his medication and was cooperative in taking his medication. The defendant had no violent episodes or trouble while at Felicia-na Forensic Facility.
In reversing the trial court’s ruling, the Louisiana Supreme Court stated:
We assume that relator remains properly classified as a mentally ill person because of the substantial probability that the symptoms of his schizophrenic illness will return if he discontinues his medication. The inability of Drs. Ritter and Vosberg, or any other physician who has testified in the course of these extended proceedings, to give absolute assurances that relator will not become aggressive or violent if he relapses into overt schizophrenic symptoms does not, however, constitute clear and convincing evidence that relator is presently dangerous. For the third time in ten years, this Court has reviewed ,the record of relator’s treatment inside and outside of the Feliciana Forensic Facility and found not evidence of any aggressive or violent behavior which might support “a reasonable expectation that there is a substantial risk that he will inflict physical harm upon another person in the near future,” or a “reasonable expectation that there is a substantial risk that he will inflict physical or severe emotional harm upon his own person.” La. R.S. 28:2(3) and (4). Relator has received *56 the maximum therapeutic benefit he can achieve at the Feliciana Forensic Facility and has been at that point since 1985. His illness is completely controlled by his medication and, as illustrated by the 1989 instance, he apparently understands the need for, and has shown no reluctance in the taking of, his medication to maintain his mental stability. According to the evidence presented at the October, 1992, hearing, his drug screen testing for illegal substances have all been negative since May of 1989, although relator has spent half of his time outside the institution. Lastly, the relator appears to have been a model patient inside | fiand outside the institution walls for several years and enjoys the unswerving support of his mother, in whose house he has lived when released on his passes and where he will live if released on conditional probation. Perez, 94-0130, pp. 5-6, 648 So.2d at 1321-1322.
In the present case, Dr. Richard Ri-choux testified at the hearing that he has been treating the defendant since 1982. The defendant was diagnosed with schizophrenia in 1982 and placed on the drug Navane. The defendant has been taking this medication since 1982 and his symptoms have been in remission for years. The medication completely suppresses the defendant’s schizophrenic symptoms. The defendant presently takes forty milligrams a day by mouth. The witness testified that the defendant has acknowledged the importance of taking his medication and has been diligent in taking the medication. Dr. Richoux stated that the defendant has gradually been granted expansion of his privileges over the years. The defendant has been on the transitional unit at East Louisiana State Mental Hospital since September of 1996. This unit is the least restrictive unit in the hospital. The defendant has exercised pass privileges for up to a week at a time since 1984. The witness noted that the defendant was responsible for his transportation from the hospital to New Orleans whenever he visited his family. The passes were not supervised by hospital personnel. The defendant has not been in trouble while out on the passes. The only incident arose after the defendant’s first pass in 1984 when he tested positive for marijuana when he returned from weekend pass. Dr. Richoux recommended defendant be placed in a group home in 1995. However, the trial court denied that request. In 1999, Dr. Richoux recommended defendant for placement in the Harmony Transitional Center, a supervised group home in Baton Rouge. The Center is affiliated with the state hospital and the forensic after care program and has its own mental health clinic 17within the facility. The clinic would prescribe the defendant’s medication. However, it would be incumbent on the defendant to take his medication. The defendant would be observed on a daily basis by the group home personnel who are experienced in watching for the symptoms of decompensation of mental illness. Dr. Richoux testified that he did not believe that the defendant was presently a danger to himself and/or others. When asked if the defendant is released from custody, was there any guarantee that he would continue on medication, Dr. Richoux stated that “[tjhere is as close to any guarantee as you can get without him remaining in the hospital, if he is sent to the Harmony Transitional Center.” It was stipulated at the hearing that Dr. Dowling, the defendant’s other treating psychiatrist, would corroborate the testimony of Dr. Richoux.
The defendant testified at the hearing on September 28, 1999. He stated that he was committed to Feliciana Forensic Facility in 1983 after being found not guilty by reason of insanity for the murder of his mother and his brother. Since 1984, the defendant has received passes once a month. He has not been in any trouble while out on these passes. The defendant stated that he visits his father and sister during these times. He acknowledged the incident in 1984 when he tested positive *57 for marijuana. He has stayed away from all drugs since that time. In 1995, his review panel recommended placement in a group home.- The trial court denied this request at a hearing in 1996 but granted defendant a fourteen-day pass once a year. The defendant stated he takes his medication daily even while he is out of the hospital on his pass.
We are unable to distinguish this case from the facts in the Perez case. In each instance, the defendant committed a heinous offense while a young man under the influence of narcotics and with an undiagnosed condition of |Rschizophrenia. Both men have acknowledged the responsibility for their crimes and willingly accepted treatment for their psychiatric conditions. Smith, like Perez, has been successfully treated with Navane and is at the maximum level of recovery. Dr. Richoux stated that Smith presents no imminent danger to himself or others. There has been no evidence presented to suggest that the defendant is presently dangerous to himself and/or others. Thus, based on the facts presented in this case, the trial court abused its discretion when it denied the defendant’s request to be transferred to a supervised group home, namely, Harmony Transitional Center.
This assignment has merit. CONCLUSION
Accordingly, the trial court’s ruling is reversed and the matter is hereby remanded to the trial court for the purpose of transferring the defendant from East Louisiana State Mental Hospital to Harmony Transitional Center. The trial court, after consultation with the defendant’s psychiatrists, should determine the conditions of the transfer and other conditions relating to the continuing care and treatment of the defendant.

REVERSED AND REMANDED.

TOBIAS, J., concurs.