DYSART, J.,
concurs in part and dissents in part.
(il agree with the majority’s finding that the plaintiffs have not established a claim for civil rights damages under 42 U.S.C. § 1983 and therefore, the trial court erred in* denying the exception of no cause of action filed by the State of Louisiana and the Department of Health and Human Resources (“DHH”). I also agree with the majority that the plaintiffs failed to establish that they suffered' any loss of consortium and as such, they are not entitled to an award for those damages. Finally, I *497 agree with the majority’s finding that the DHH did not have authority to release Mr. Harper without a court order expressly ordering the unconditional release of Mr. Harper.
While I agree with the majority that fault may lie with some of the parties, I do not believe the record demonstrates any liability on the part of the DHH for the damages alleged to have been incurred as a result of Willie Harper’s detainment. While the majority assigns thirty-five percent liability to the DHH for Mr. Harper’s “wrongful confinement,” the basis of that liability is unclear. In my view, the plaintiffs failed to establish a legal basis for their claims against the DHH, as explained herein.
Once a person has been found not guilty of a non-capital crime by reason of insanity, it is the trial court which determines the immediate disposition of that | aperson. La.C.Cr.P. art. 654 provides that “the court shall remand him to the parish jail or to a private mental institution approved by the court and shall promptly hold a contradictory hearing at which the defendant shall have the burden of proof, to determine whether the defendant can be discharged or can be released on probation, without danger to others or to himself.” (Emphasis added).
Thereafter, whether that person may be subsequently released is determined by La.C.Cr.P. art. 655, which sets forth the exclusive manner by which that person may be released. Article 655 provides, in pertinent part, as follows:
A.- When the superintendent of a mental institution is of the opinion that a person committed pursuant to Article 654 can be discharged or can be released on probation, without danger to others or to himself, he shall recommend the discharge or release of the person in a report to a review panel comprised of the person’s treating physician, the clinical director of the facility to which the person is committed, and a physician or psychologist who served on the sanity commission which recommended commitment- of the person .... The panel shall review all reports received promptly. After review, the panel shall make a recommendation to the court by which the person was committed as to the person’s' mental condition and whether he can be discharged, conditionally or unconditionally, or placed on probation, without being a danger to others or himself. If the review panel recommends to the court that the person be discharged, conditionally or unconditionally, or placed on probation, the court shall conduct a contradictory hearing following notice to the district attorney. (Emphasis added).
tinder La.C.Cr.P. art. 657, the trial court is to consider the reports submitted under Article 655 and either “continue the commitment or hold a contradictory hearing to determine whether the committed person is no longer mentally ill ... and can be discharged, or can be released on probation, without danger to others or to himself....” After the hearing has been conducted, “and upon filing written findings of fact and conclusions of law, the court may order the committed person discharged, released on probation subject to specified conditions for a fixed or an | ¡jindeterminate period, or recommitted to the state mental institution.” (Emphasis added). Id.
As comment (a) of the official comments to Article 657 indicates, “[t]his article provides flexibility in release procedures, to cope with circumstances of individual cases, by allowing the court to act on *498 the basis of the application and reports filed, or to order a full hearing to determine the propriety of the requested release.” (Emphasis added). Thus, it is the trial court’s obligation to determine whether a person who had been committed after a guilty by reason of insanity (“NGRI”) finding may be released. There is no statutory provision whereby the DHH may release a person on its own determination. Nor is there any jurisprudential authority allowing the DHH the discretion to make the call as to whether a person may be released.
While the majority points to two judgments which found Mr. Harper to not be a danger to himself or others, neither of those judgments ordered his unconditional release. Rather, and as Judge Waltzer testified, the judgments stated that Mr. Harper should be released only if suitable living arrangements could be found. At other times, psychiatrists testified at hearings before the trial court that, while Mr. Harper was not a danger, he was in need of supervision. The docket master following those hearings reflects that Mr. Harper’s attorney was “to inform the Court as to the availability of a responsible person or relative” who could supervise Mr. Harper.
I find no authority, statutory or otherwise, which places the responsibility on the DHH to have located suitable living arrangements for Mr. Harper.
Similarly, I find no authority for the principle that the DHH is obligated to request hearings to determine whether a person found NGRI should be released pursuant to Article 655 or move for a court order allowing the release of such person. Rather, Article 655 indicates that, when the superintendent of a mental | ¿institution believes that the person is not a danger to himself or others, the superintendent is to “recommend the discharge or release of the person in a report to a review panel.” La.C.Cr.P. art. 655. The panel is then to “make a recommendation to the court.” Id. It is the trial court’s responsibility to proceed thereafter. To hold otherwise would be to create an advocacy duty on the part of the DHH — to effectively make the DHH the “lawyer” for those persons in its custody — a result which is unsupported by our jurisprudence or statutory scheme.
In the instant matter, the record is replete with examples of review panel recommendations, evaluations and assessments of Mr. Harper, all of which were provided to the trial court. At no time did those recommendations, evaluations and assessments result in a hearing after which the trial court issued written findings of fact and conclusions of law, whereby the court “order[ed] that [Mr. Harper] be discharged, released on probation subject to specified conditions for a fixed or an indeterminate period, or recommitted to the state mental institution” pursuant to Article 657.
It should also be noted that Article 655 permits “[a] person committed pursuant to Article 654[to] make application to the review panel for discharge or for release on probation.” Certainly, the lawyer of a person found NGRI may likewise seek for that person’s discharge or release and our jurisprudence reflects many examples of cases in which either a person or his counsel moved for his release or for other considerations.[1] See, e.g., State v. Perez, 563 So.2d 841, 841 (La.1990); State v. Smith, 00-0907 (La.App. 4 Cir. 1/17/01), 779 So.2d 52; State v. Watson, 00-2185 (La.App. 4 Cir. 1/17/01), 779 So.2d 46; State v. Breland, 495 So.2d 366, 367 (La. *499 App. 3rd Cir.1986); State v. Boulmay, 498 So.2d 213, 214 (La.App. 1st Cir.1986); State v. Stewart, 467 So.2d 1324, 1325 (La.App. 5th Cir.1985); State v. Rambin, 427 So.2d 1248, 1250 (La.App. 2nd Cir.1983).
For these reasons, I do not find that the DHH has any liability for the alleged unlawful confinement of Mr. Harper and I would reverse the jury’s award against the DHH altogether.

. In fact, in this case, in 1989, the Orleans Indigent Defender's office, on Mr. Harper’s behalf, sought to have Mr, Harper evaluated to determine whether he could be released.